In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3086

Gary Hamner,

Plaintiff-Appellant,

v.

St. Vincent Hospital and Health
Care Center, Inc.,

Defendant-Appellee.


Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 97 C 1574--V. Sue Shields, Magistrate Judge.


Argued May 9, 2000--Decided August 24, 2000


Before Manion, Kanne, and Rovner, Circuit Judges.

Manion, Circuit Judge.  Gary Hamner sued his
former employer, St. Vincent Hospital, under
Title VII, alleging that the hospital terminated
him in retaliation for submitting a sexual
harassment grievance. The case went to trial. At
the conclusion of Hamner's case-in-chief, the
hospital moved for judgment as a matter of law,
arguing that Hamner's grievance only alleged that
he was harassed because of his sexual orientation
(not because of his sex), and thus he failed to
present sufficient evidence for a reasonable jury
to find that he opposed an unlawful employment
practice under Title VII. The magistrate judge
granted the hospital's motion, concluding that
Hamner failed to establish the first element of
his retaliation case because he failed to show
that he opposed an unlawful employment practice
under Title VII. Hamner appeals, and we affirm.

I.

Gary Hamner is a male nurse and a homosexual who
began working for St. Vincent Hospital in 1993.
In 1995, he became the charge nurse of a unit in
the St. Vincent Stress Center where he supervised
the staff, including nurses, clinicians and
technicians, and communicated with physicians to
coordinate patient care. Hamner's direct
supervisor was Marilyn Knoy, a Nursing Manager,

and Knoy's supervisor was Dr. Joseph Edwards, the Medical Director of the same unit in the Stress Center.

Because they worked in the same unit, Hamner and Edwards had to communicate with each other to provide patient care. According to Hamner, he and Edwards had a poor working relationship. Edwards would refuse to acknowledge or communicate with Hamner, screamed at him during telephone conversations, and harassed him by lisping at him, flipping his wrists, and making jokes about homosexuals.

On September 26, 1996, Hamner filed a written grievance with the hospital about Edwards's harassment. The parties dispute the basis of Hamner's grievance, a copy of which is not in the record. According to Hamner, he complained that Edwards was harassing him because of his sex and sexual orientation. The hospital alleges, however, that Hamner's grievance was based only on his belief that Edwards harassed him because of his homosexuality. Shortly after Hamner filed his grievance, Dr. Paul Lefkovitz, the Executive Director of the Stress Center (and Edwards's supervisor), investigated the grievance. After concluding his investigation, Lefkovitz sent Hamner a letter on October 15, 1996, stating that he talked with Edwards about Hamner's complaints about Edwards's "homophobia," and that Edwards acknowledged his "irreverent" humor and that he would be more mindful of Hamner's concerns in the future.

Subsequently, the hospital fired Hamner on October 18, 1996. The events surrounding his termination occurred on October 8, 1996, when Hamner performed the admitting procedures for an 85-year-old nursing home patient. According to hospital procedure, Hamner performed a physical assessment of the patient and phoned Edwards to receive his admission orders. During their conversation, Hamner and Edwards forgot to discuss the patient's code status, which is given to patients upon admission. A patient with a Code Status A wishes to be provided full resuscitative measures in the event of cardiac or respiratory failure, while a patient with Code Status C wishes to be provided only with comfort measures in such a situation. After his conversation with Edwards, Hamner discussed the patient's code status with the patient's family, and one family member provided a document that indicated that the patient was a Code Status C at the nursing home. Hamner then wrote on the Order Sheet the notation: "Code C: To be approved by Dr."

The next morning, Edwards noticed Hamner's notation on the Physician Order Sheet, and told

Hamner that he had written an order that Edwards had not given, and that this action endangered the patient. Edwards changed the patient's code status back to Code Status A and reported the incident to Knoy. Knoy discussed the incident with the Director of Nursing and a member of the Human Resources Department, and the three of them decided to terminate Hamner for willful falsification of a hospital document, the Physician Order Sheet. Lefkovitz upheld that decision.

Hamner sued the hospital under Title VII, alleging that Edwards harassed him because of his sex and sexual orientation, and that the hospital terminated him in retaliation for filing a grievance about Edwards's sexual harassment. The parties consented to a trial by a magistrate judge, and stipulated to dismiss the sexual harassment claim. The hospital then moved for summary judgment on the retaliation claim, which was denied, and the case went to trial.

After Hamner presented his case-in-chief, the hospital moved, pursuant to Federal Rule of Civil Procedure 50(a), for judgment as a matter of law, arguing that Hamner failed to establish the first element of his retaliation case by showing that he opposed (or had a reasonable belief that he was opposing) an unlawful employment practice under Title VII. The magistrate judge granted the motion, and Hamner appeals.

"We review de novo the grant of judgment as a matter of law (directed verdict) under Federal Rule of Civil Procedure 50(a)." Payne v. Milwaukee County, 146 F.3d 430, 432 (7th Cir. 1998). And we "review the evidence in a light most favorable to the non-moving party to determine whether there was no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." Id.
II.

Title VII prohibits employers from harassing employees "because of [their] sex."/1 Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78-79 (1998); 42 U.S.C. sec. 2000e-2(a)(1). Same-sex sexual harassment is actionable under Title VII "to the extent that it occurs 'because of' the plaintiff's sex." Shepherd v. Slater Steels Corp., 168 F.3d 998, 1007 (7th Cir. 1999). "The phrase in Title VII prohibiting discrimination based on sex" means that "it is unlawful to discriminate against women because they are women and against men because they are men." Ulane v. Eastern Airlines, Inc., 742 F.2d 1081, 1085 (7th Cir. 1984). In other words, Congress intended the term "sex" to mean "biological male or biological female," and not one's sexuality or sexual

orientation. See id. at 1087. Therefore, harassment based solely upon a person's sexual preference or orientation (and not on one's sex) is not an unlawful employment practice under Title VII. Id. at 1085.

Title VII also "protects persons not just from certain forms of job discrimination [and harassment], but from retaliation for complaining about the types of discrimination it prohibits."/2 Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000); 42 U.S.C. sec. 2000e-3(a). To prevail on a claim of retaliation, the plaintiff must show, by a preponderance of the evidence, that he: (1) opposed an unlawful employment practice [under Title VII]; (2) was the object of an adverse employment action; and (3) that the adverse employment action was caused by his opposition to the unlawful employment practice. Cullom v. Brown, 209 F.3d 1035, 1040 (7th Cir. 2000)./3

In this case, Hamner initially argues that, in fact, his grievance was about sexual harassment, as well as sexual orientation harassment, and thus he complained about an unlawful employment practice under Title VII, as required by the first element of a retaliation case. Because a copy of Hamner's grievance is not in the record, Hamner relies solely on his trial testimony to support his contention. But that testimony clearly demonstrates that the alleged harassment, and Hamner's complaints about it, were based exclusively on his homosexuality. First, his response to direct questions by his attorney:

Q What did you believe you were opposing?

A When I complained to the hospital I believed that I was complaining about sexual harassment; the harassment in general on the floor. It was never a contention that Dr. Edwards had physically approached me or physically abused me in any way. It was merely the fact that because I am gay, because that just is who I am, he was opposed to that and he absolutely could not handle that. And, so, it was constant harassment because of my sexual orientation.

Q Do you believe there is a difference between your sex and your sexual orientation?

A Uhmm, no sir, I don't . . . . . I believed that Joseph Edwards did not have the right under the law to treat me differently because of my orientation.

Hamner still claims that the following excerpt supports his contention that his grievance was based on both sex and sexual orientation:

Q What did you complain about?

A I complained about the harassment, the sexual innuendos that were made on the unit in my presence. He [Edwards] would scream at me, hang up on me, tell me don't bother him unless it's an emergency. It was just a very, very uncomfortable situation and I did not appreciate the harassment. Nor did I appreciate the sexual innuendos.

On further direct examination, however, Hamner's testimony was consistent in demonstrating that his complaint was based only on Edwards's harassment directed at Hamner's sexual orientation:

Q [C]an you elaborate on the sexual innuendos, please?

A When I worked on the unit I think that we had talked, and several times about Dr. Edwards having a real problem with homosexuals. It had been explained to me by Marilyn and other employees that had been there for a long time that Joe just didn't like gay people and that he would not ever treat me any differently. When I would be in the unit he would be--come on the unit, be talking to nurses, and I would find that he was making little gay jokes, flipping a wrist, lisping, just little annoying things that, finally, I just couldn't tolerate it.

Q Is that why you filed the written complaint?

A That was why I filed the complaint.

Finally, Hamner presents the following testimony by Lefkovitz to claim that the grievance involved allegations of sex and sexual orientation harassment:

Q With regard to the September 26th grievance, Gary Hamner was alleging that Dr. Joseph Edwards was discriminating against him on the basis of his sex and sexuality; is that correct?

A Yes.

But this excerpt paints an incomplete picture. The rest of Lefkovitz's testimony clearly demonstrates that he understood Hamner's grievance to be based on "homophobia" and not on sexual harassment. In response to the next two questions from Hamner's counsel, Lefkovitz affirmed that Hamner "alleged that Dr. Edwards was homophobic." Later on in his testimony, Lefkovitz stated again that Hamner's "allegations were made that he [Edwards] was homophobic." And

the following exchange occurred between Lefkovitz and the hospital's counsel:

Q Dr. Lefkovitz, did you understand what plaintiff was telling you was that Dr. Edwards was acting towards plaintiff because of his homosexuality?

A That's what I heard the allegations to be.

Moreover, Lefkovitz's October 15, 1996 letter to Hamner makes no mention of sexual harassment, but it does state: "I made him [Edwards] aware of your concerns and complaints that he was intimidating and discriminating against you on the basis of 'his homophobia.'" And finally, Hamner's own testimony about his complaint to Lefkovitz confirms that the grievance only concerned Edwards's "homophobia":

Q Did you tell Dr. Lefkovitz that your complaint was about homophobia only?

[counsel's objection overruled by the court]
A When I talked to Dr. Lefkovitz trying to resolve the problem that I was obviously having, we discussed in detail the homophobia. I had given him examples of Joe's [Edwards's] homophobia in the past, comments that had been made not only by other staff people, but his wife that we worked with. I had told him how difficult it was for me to work; that it was an intolerable situation; not only the homophobia, but the general overall haranguing and harassing that I felt the hospital was allowing to go on and on.

According to the record, therefore, Hamner's grievance was based on Edwards's harassment directed at Hamner's homosexuality as shown by flipping his wrists, lisping, and telling jokes about homosexuals. In addition, Edwards committed more general harassment that included screaming and refusing to communicate with Hamner in a professional manner. Hamner's grievance did not involve sexual harassment, however, because it did not assert that Edwards treated Hamner differently because he is a man./4

Nevertheless, Hamner insists that the jury still could have found in his favor on the retaliation claim because he reasonably believed that he complained about sexual harassment. In other words, he thought he was opposing an employment practice that violated Title VII. It is true that "our cases hold that an employee may engage in statutorily protected expression under section 2000e-3(a) even if the challenged practice does not actually violate Title VII." Dey v. Colt Const. & Development Co., 28 F.3d 1446, 1457 (7th Cir. 1994). It is sufficient if the plaintiff has

a sincere and reasonable belief that he is opposing an unlawful practice. Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1314 (7th Cir. 1989); see also Dey, 28 F.3d at 1458. That means, for example, that even if the degree of discrimination does not reach a level where it affects the terms and conditions of employment, if the employee complains and the employer fires him because of the complaint, the retaliation claim could still be valid. But the complaint must involve discrimination that is prohibited by Title VII. The plaintiff must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII. Sexual orientation is not a classification that is protected under Title VII; thus homosexuals are not members of a protected class under the law. Ulane, 742 F.2d at 1085. Hamner's allegations cannot be without legal foundation, but must concern "the type of activity that, under some circumstances, supports a charge of sexual harassment." Holland, 883 F.2d at 1315. If a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable. See Wimmer v. Suffolk County Police Dept., 176 F.3d 125, 135 (2d Cir. 1999) (plaintiff's complaint of retaliation for opposing discrimination by co-employees against non-employees is not cognizable under Title VII because the statute only prohibits discrimination by employers, not co-employees, and thus plaintiff's opposition was not directed at an unlawful employment practice). As the law stands, the harassment that he opposed did not violate Title VII.

Even so, Hamner still contends that there is no difference between his sex and his sexual orientation, and thus he reasonably believed that Edwards harassed him because of his sex. Hamner's belief may be sincere, but it is not objectively reasonable as a matter of law. The reality is that there is a distinction between one's sex and one's sexuality under Title VII, Ulane, 742 F.2d at 1085, and that the statute only prohibits employers from harassing employees because of their sex. Oncale, 523 U.S. at 79. Here, the record only supports the conclusion that Edwards's harassment of Hamner was based on Hamner's homosexuality, and thus no reasonable jury could find that Hamner reasonably believed that his grievance was directed at an unlawful employment practice under Title VII./5

Finally, Hamner presents a new argument on appeal, contending that he reasonably believed

that Edwards's harassment was based on sex because his gestures (lisping and flipping his wrists) were specifically intimidating to men and their manhood, but not to women, including homosexual women. Because Hamner failed to raise this argument to the district court, it is waived. Robyns v. Reliance Standard Life Ins. Co., 130 F.3d 1231, 1238 (7th Cir. 1997). Moreover, this argument has no merit. We have already established from Hamner's testimony that he believed that Edwards's gestures evinced his "homophobia," and thus pertained only to Hamner's sexual orientation, and not to his sex. And the record contains no evidence to indicate that Edwards's gestures were motivated by a general hostility to men,/6 which would be an example of the type of evidence necessary in this case to sustain Hamner's reasonable belief claim. See Oncale, 523 U.S. at 80. Because there is no evidence to support Hamner's belief that he filed a sexual harassment grievance, his reasonable belief claim fails.

In conclusion, Hamner's retaliation claim fails as a matter of law because the conduct that he opposed (harassment because of his sexual orientation) is not, under any circumstances, proscribed by Title VII, and thus he has failed to provide sufficient evidence for a reasonable jury to conclude that he opposed (or reasonably believed that he was opposing) an unlawful employment practice under Title VII. Accordingly, we AFFIRM the magistrate judge's decision.

/1 This provision of Title VII provides that: "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. sec. 2000e-2(a)(1).

2/ The retaliation provision of Title VII provides that: "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. sec. 2000e-3(a).

/3 Although the parties couch their arguments in terms of the burden-shifting method of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), that approach only applies to pretrial proceedings, and "drops out once a case goes to trial, that is, once it is past the summary judgment stage."

Wilson v. AM General Corp., 167 F.3d 1114, 1123 n. 1 (7th Cir. 1999) (Manion, J. and Rovner J., concurring); see also Cullom, 209 F.3d at 1039-40 n. 3; Diettrich v. Northwest Airlines, Inc., 168 F.3d 961, 965 (7th Cir. 1999).

/4 Hamner presents no evidence that he was the only male nurse on the unit, or that Edwards treated male nurses differently than female nurses.

/5 For example, the record may have supported Hamner's reasonable belief claim if the record demonstrated that Edwards disapproved of men in the nursing profession, and manifested his disapproval by perceiving all male nurses to be homosexuals, and harassed them accordingly, while female nurses were not subjected to such harassment; or Edwards harassed homosexual male nurses but not homosexual female nurses. See Oncale, 523 U.S. at 80-81.

/6 Supra note 4.