In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3538

Edison K. Spearman,

Plaintiff-Appellant,

v.

Ford Motor Company,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 452--David H. Coar, Judge.

Argued April 5, 2000--Decided November 3, 2000

Before Manion, Kanne, and Evans, Circuit Judges.

Manion, Circuit Judge. Edison Spearman sued his current employer, Ford Motor Company, alleging that Ford violated Title VII by subjecting him to a hostile environment of sexual harassment, retaliating against him for opposing sexual harassment, and for discriminating against him on the basis of his sex. Ford moved for summary judgment, which the district court granted. Spearman appeals, and we affirm.

I.

Edison Spearman is a black man and a homosexual/1 who has been working for Ford since 1990. In October 1995, Spearman worked as a "blanker operator" at Ford's Chicago Heights Stamping Plant, where he operated press machines that "blank" or "stamp" sheet metal into dimensional form. In the summer of 1997, Spearman was promoted to the position of "blanker utility" worker, and assigned to relieve two blanker operators (Gregory Curtis and Steve Neeley) for their work breaks, lunch breaks and other rotations.

Spearman filed his first of several complaints of harassment on December 8, 1995, in which he reported that since his assignment as a blanker operator in October 1995, Curtis constantly took personal items (pens, newspapers, and gloves) from him without his permission. When Spearman told Curtis to stop, Curtis (a black man) called Spearman a "nigger" and a "selfish bitch." Curtis would also hound Spearman for lunch money, and then call him a "cheap ass bitch" if his requests were occasionally denied. Following a glove-snatching incident, Spearman had two meetings with his union representative and Curtis to resolve the matter.

Spearman reported no further incidents of harassment until May 16, 1997, when he filed a written complaint concerning an altercation with Curtis over the timing of lunch breaks. Curtis confronted Spearman, called him a "little bitch," told him that he hated his "gay ass," and threatened to go to Spearman's residence in Indiana and "f---- [his] gay faggot ass up." To defuse the situation, a foreman assigned Spearman and Curtis to different press areas for the balance of the shift. The following week, labor relations investigated the matter and held two meetings with Spearman, Curtis and a union representative.

Curtis and Neeley testified that they and their co-workers at Ford suspected that Spearman was a homosexual. According to Curtis, he thought that Spearman was homosexual when they first met and Spearman supposedly took "a full look" at Curtis like a man would look at a woman. Curtis also opined that other blanker operators at Ford were uncomfortable with Spearman because they observed that he "looked [them] over" like a man would "take a full look" at a woman, that he got too close to his male co-workers when he talked to them, and even "rubbed up especially close" to some of them. Curtis also testified that one co-worker started "squirming" when others teased him that Spearman had a "crush" on him. And Curtis also claimed that his brother-in-law and a co-worker told him that they saw Spearman at gay nightclubs.

According to Spearman, Curtis continually harassed him after the May 1997 incident by reporting to work late and returning from his breaks late in order to disrupt Spearman's relief schedule as a utility worker, and thus deprive him of his breaks and lunches. Curtis's negative behavior toward Spearman continued until he was moved to another press machine (and away from

Spearman) in October 1997.

Spearman submitted another written complaint concerning a June 21, 1997 argument with Neeley over the timing of a break. As a blanker utility worker, Spearman told Neeley to take a break, but Neeley refused, leaned into Spearman's face, and taunted him by telling Spearman to hit him. In his complaint, Spearman wrote: "[T]here's a constant problem with Steve, when it comes to breaks; since I've become utility, he rebels and insist [sic] on debating me about how and when I relieve." Labor relations responded by conducting a meeting with all of the parties involved in the matter.

In June 1997, Spearman discovered graffiti on the bulletin board that stated: "Aids kills faggots dead . . . RuPaul, RuSpearman."/2 Spearman waited five months to report the incident, and when he did, labor relations representatives promptly painted over it the following day.

On October 21, 1997, Spearman delivered another complaint to Ford that involved an altercation with George Pearson (who was temporarily assigned to work with Spearman) about the timing of a break. While Pearson was leaving his work station, he said to Spearman, "You f----ing jack-off, pussy-ass," and saluted Spearman with his middle finger. Spearman reported the incident to his foreman, Anthony Perez, who assured Spearman that he would discuss the matter with Pearson and "discipline him." Shortly after Spearman filed his complaint about the incident, a labor relations representative investigated the matter and conducted a meeting with Spearman and his union representative.

In November 1997, Spearman discovered more graffiti outside a portable toilet that stated: "Ed Sperman [sic] is a fag and has AIDS" and "Edison Sperman [sic] is gay." Labor relations representatives painted over the graffiti immediately after Spearman's report.

Ford received another letter from Spearman around November 24, 1997, in which he complained that he was being harassed by Perez, who used the following instructional hypothetical at a department meeting about sexual harassment:

Say for instance, Greg and Ed are in the back bringing in a coil, and Ed touches Greg in a way that made him feel uncomfortable, that can be a

charge of sexual harassment.

Spearman believed that Perez's hypothetical was about himself (Ed) and Greg Curtis, and thus it was "totally inappropriate" and harmful to Spearman because he and Curtis had been involved in several altercations in the past. Perez testified that he was not referring to Spearman in the example, but to Ed Rolff, one of Spearman's co-workers.

In the same letter, Spearman also complained that Perez had offered to give him a hug on two separate occasions. On the first occasion, Spearman admits that Perez greeted him with a hug because he showed up for work during a staff shortage in the summer of 1997. But Spearman stated that he "felt very awkward" about Perez's second offer of a hug that occurred when Spearman was confused about overtime duties and consulted Perez for advice. Perez testified that Spearman appeared to be distraught because the press machine was not working, and that Perez offered to give him a hug to lift his spirits.

During the afternoon of November 24, 1997, Perez instructed Spearman to perform housekeeping duties and wash the windows of the press machines for about an hour before the end of his shift. Spearman believed that his assignment was punitive and that Perez was retaliating against him for his November 17, 1997 harassment complaint about Perez's instructional hypothetical and offers to hug Spearman. He left work that day, went on medical leave in December 1997, and did not return to work until May 4, 1998. Perez testified that he assigned similar housekeeping tasks to other utility workers and operators to keep them busy when they were not operating the press machines.

During his medical leave, Spearman received treatment for depression. When he returned to work after a five-month absence, he discovered that his tool box was destroyed and that his tools had been stolen.

Spearman then sued Ford, alleging that it violated Title VII by subjecting him to a hostile environment of sexual harassment; by retaliating against him because he filed complaints opposing sexual harassment; and by discriminating against him because of his sex by failing to investigate his sexual harassment complaints as promptly as similar complaints from female employees. Ford moved for summary judgment. The district court

granted Ford's motion, concluding that while Spearman established a reasonable inference that he was harassed because of his sex, his sexual harassment claim failed because he did not show that the harassment was severe enough to cause a change in his employment conditions. The district court also denied Spearman's retaliation claim by concluding that he failed to establish a prima facie case by showing that he suffered an adverse employment action. The court did not address Spearman's sex discrimination claim. Spearman appeals.

II.

"We review the district court's entry of summary judgment de novo," Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1003 (7th Cir. 2000), viewing all of the facts, and drawing all reasonable inferences from those facts, in favor of the nonmoving party. Id. Summary judgment is proper if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999) (citing Fed. R. Civ. P. 56(c)).

Title VII prohibits an employer from harassing an employee "because of [the employee's] sex."/3 Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78 (1998); 42 U.S.C. sec. 2000e-2(a)(1). Same-sex sexual harassment is actionable under Title VII "to the extent that it occurs 'because of' the plaintiff's sex." Shepherd v. Slater Steels Corp., 168 F.3d 998, 1007 (7th Cir. 1999). We have stated that "[t]he phrase in Title VII prohibiting discrimination based on sex" means that "it is unlawful to discriminate against women because they are women and against men because they are men." Ulane v. Eastern Airlines, Inc., 742 F.2d 1081, 1085 (7th Cir. 1984). In other words, Congress intended the term "sex" to mean "biological male or biological female," and not one's sexuality or sexual orientation. See id. at 1087. Therefore, harassment based solely upon a person's sexual preference or orientation (and not on one's sex) is not an unlawful employment practice under Title VII. Id. at 1085; see also Hamner v. St. Vincent Hosp. and Health Care Center, Inc., 224 F.3d 701, 704 (7th Cir. 2000).

A.  Hostile Environment Claim

Spearman first argues on appeal that he was sexually harassed at Ford in violation of Title VII. He claims that the vulgar and sexually

explicit insults and graffiti of his harassers were motivated by "sex-stereotypes" because his co-workers perceived him to be too feminine to fit the male image at Ford. His contention relies primarily on Curtis's testimony that there is a "masculine" environment at the Ford plant, implying that he questioned Spearman's masculinity. Spearman also contends that Curtis engaged in sex stereotypes when he called Spearman a "bitch," which, according to another utility worker at Ford (David Gibson), meant that Curtis called Spearman a "woman." Moreover, Spearman asserts that the graffiti associating him with a drag queen (RuPaul) proves that his co-workers perceived him to be too feminine to work at Ford. And he claims that sex stereotypes motivated Perez to harass him with the window-washing assignment, which is a function "traditionally reserved for women" (a view that could also be labeled sex stereotyping).

While sexually explicit language may constitute evidence of sexual harassment, it is not "always actionable, regardless of the harasser's sex, sexual orientation, or motivations." See Oncale, 523 U.S. at 79. The plaintiff must still show that he was harassed because of his sex. Id. Similarly, while sex stereotyping may constitute evidence of sex discrimination, "[r]emarks at work that are based on sex-stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on [the plaintiff's] gender in making its decision." Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989). Therefore, according to Oncale and Price Waterhouse, we must consider any sexually explicit language or stereotypical statements within the context of all of the evidence of harassment in the case, and then determine whether the evidence as a whole creates a reasonable inference that the plaintiff was discriminated against because of his sex.

Here, the record clearly demonstrates that Spearman's problems resulted from his altercations with co-workers over work issues, and because of his apparent homosexuality. But he was not harassed because of his sex (i.e. not because he is a man). His harassers used sexually explicit, vulgar insults to express their anger at him over work-related conflicts. However, these conflicts did not arise because he is a man. Curtis directed insults at Spearman to irritate or provoke him during three specific arguments about lunch money, small personal items, and the timing of lunch breaks. And Pearson directed a barrage of derogatory remarks

at Spearman after he unsuccessfully protested Spearman's order to take a break. It is clear that Curtis and Pearson lodged sexually explicit insults at Spearman to express their acrimony over work-related disputes, and not to harass him because he is a man; and such conduct does not constitute sexual harassment. See Johnson v. Hondo, Inc., 125 F.3d 408, 412 (7th Cir. 1997) (sexually explicit remarks among male co-workers were "simply expressions of animosity or juvenile provocation," and were not directed at the plaintiff because of his sex).

The record also shows that Spearman's co-workers maligned him because of his apparent homosexuality, and not because of his sex. The testimonies of Curtis and Neeley clearly demonstrate that Spearman's harassers were motivated by their suspicion of Spearman's sexual orientation and his perceived desire for some sort of physical intimacy with them. And even Spearman's understanding of Perez's instructional hypothetical indicates that Perez teased him about his homosexuality. Moreover, Spearman's co-workers directed stereotypical statements at him to express their hostility to his perceived homosexuality, and not to harass him because he is a man. See Price Waterhouse, 490 U.S. at 251. Curtis called him a "bitch" which, according to Gibson, means a "woman," or a "faggot." And the graffiti that specifically stated that Spearman is "gay," a "fag," and compared him to a drag queen confirms that some of his co-workers were hostile to his sexual orientation, and not to his sex.

Title VII is not a "general civility code" for the workplace, see Oncale, 523 U.S. at 81; it does not prohibit harassment in general or of one's homosexuality in particular. Likewise, sexually explicit insults that arise solely from altercations over work-related issues, while certainly unpleasant, do not violate Title VII. Because Spearman was not harassed because of his sex, his hostile environment claim fails. Oncale, 523 U.S. at 78.

B.  Retaliation Claim

Spearman's next argument on appeal is that Perez assigned him the window-washing task to retaliate against him for his written complaint about Perez's harassment, in violation of Title VII.

Title VII "protects persons not just from certain forms of job discrimination [and

harassment], but from retaliation for complaining about the types of discrimination it prohibits."/4 Miller, 203 F.3d at 1007; 42 U.S.C. sec. 2000e-3(a). To prevail on a claim of retaliation, the plaintiff must show that: (1) he complained about conduct that is prohibited by Title VII; (2) he suffered an adverse employment action; and (3) the adverse employment action was caused by his opposition to the unlawful employment practice. Miller, 203 F.3d at 1007. An "adverse employment action" alters the "terms or conditions" of one's employment. Silk, 194 F.3d at 804. It "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits as well as the 'denial of a raise or promotion.'" Id. at 804 n.16 (quoting Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

Here, Perez assigned Spearman to wash the windows of his two press machines for about an hour. Spearman argues that the assignment was "degrading and punitive" and thus diminished his job responsibilities as a utility worker. But he also testified that he performed housekeeping duties as a utility worker before, including sweeping around the press machines and removing trash from the plant floor. Thus, the additional task of washing the windows of the press machines certainly did not "significantly" alter (if at all) the terms and conditions of his employment. Perez testified that the cleaning assignments were to keep Spearman busy with necessary clean-up chores rather than having him "standing there doing nothing" for an hour or so before his relief duties were to begin. The assignment was nothing more than "a mere inconvenience or an alteration of job responsibilities," Crady v. Liberty Nat. Bank and Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir. 1993), and thus Spearman's retaliation claim fails./5

C.  Sex Discrimination Claim

Spearman's last claim on appeal is that Ford discriminated against him on the basis of his sex by failing to investigate his alleged sexual harassment complaints as promptly as it investigated sexual harassment complaints from female employees. To raise a prima facie case of sex discrimination, Spearman must show that: (1) he belongs to a protected class (in this case, males); (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) Ford treated similarly situated female employees more favorably. See Greenslade v.

Chicago Sun-Times, Inc., 112 F.3d 853, 863 (7th Cir. 1997).

Spearman's discrimination claim does not meet the fourth test of the prima facie case. We have already established that none of his complaints involved sexual harassment, and there is no evidence in the record that demonstrates that Ford perceived Spearman's complaints to be about sexual harassment at the time he filed them. Therefore, Spearman does not show that he was similarly situated to female employees who filed sexual harassment complaints. Furthermore, the record demonstrates that Ford sought to resolve Spearman's complaints with investigations, meetings, and by promptly painting over graffiti. Spearman provides no evidence that Ford responded more vigorously to sexual harassment complaints from female employees. Because Spearman's complaints were not about sexual harassment, and he provides no comparative evidence to support his disparate treatment claim, it fails./6 Cheek v. Peabody Coal Co., 97 F.3d 200, 204 (7th Cir. 1996).

III.

Although the district court determined that there was evidence that Spearman was sexually harassed, but granted summary judgment for Ford by concluding that the harassment was not severe or pervasive enough to cause a change in Spearman's employment conditions, we conclude that Spearman's sexual harassment (hostile environment) claim fails because he was not harassed because of his sex; his retaliation claim fails because he did not suffer an adverse employment action; and his disparate treatment claim fails because he has not shown that he was similarly situated to female Ford employees who filed sexual harassment complaints, or that Ford treated female employees more favorably. We AFFIRM.

/1 Spearman testified at his deposition that he is a homosexual, but he claims that he never made that known to anyone at Ford.

/2 RuPaul is the name of a black, male drag queen and entertainer.

/3 This provision of Title VII provides that: "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. sec. 2000e-2(a)(1).

/4 The retaliation provision of Title VII provides that: "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. sec. 2000e-3(a).

/5 The retaliation claim also fails because Spearman's numerous complaints of co-worker abuse did not involve an unlawful employment practice under Title VII, and there is no evidence in the record that he even had a subjective belief that he was being sexually harassed. See Hamner, 224 F.3d at 707.

/6 It is also questionable whether Spearman ever suffered an adverse employment action, but because we conclude that his sex discrimination claim fails because there is no evidence that he meets the fourth test of a prima facie case, we decline to address this issue.