**Danielle HOWELL, Plaintiff,**

v.

**NORTH CENTRAL COLLEGE, the Trustees of North Central College, by and Through its Chairman, Richard Norenberg, Walter Johnson, Linda Olson, Karen Seremet, Defendant.**

**No. 02 C 7163.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 2, 2004.

ball team for a little more than two seasons. During that time, she claims to have been targeted for harassment because she is a heterosexual. On October 4, 2002, plaintiff filed a four-count complaint, charging the college and the other defendants with sexual harassment in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, violation of her due process rights under 42 U.S.C. § 1983, and intentional and negligent infliction of emotional distress. Since that time, the court has dismissed plaintiff's Title IX claims against the individual defendants, her § 1983 claims against all defendants, and all her claims against defendant Richard Norenberg. Now, plaintiff seeks to file an amended complaint which would add a claim of retaliation in violation of Title IX, and a claim for breach of contract.[1]

Kent D. Sinson, Chicago, IL, for Plaintiff.

Katherine A. Rodosky, Schueler, Dallavo & Casieri, Chicago, IL, for Defendant.

### MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion of plaintiff Danielle Howell for leave to file an Amended Complaint pursuant to Fed. R.Civ.P. 15.

Plaintiff attended North Central College from September of 1998, until June of 2003, and played on the women's basket-

### I. PLAINTIFF'S ALLEGATIONS

The core of plaintiff's allegations have not changed from her original complaint to her amended complaint. Plaintiff matriculated at North Central College in Naperville, Illinois, in the fall of 1998. According to plaintiff, she was a productive member of the women's basketball team during her sophomore and junior seasons. At that time, the head coach was Linda Olson, and Karen Seremet was, apparently, an assistant coach. (*Complaint at Law*, ¶¶ 12–13; *Amended Complaint at Law*, ¶¶ 12–13). Plaintiff alleges that Olson began to exclude her from certain team activities at the beginning of her junior season in 2000. (*Complaint at Law*, ¶ 18; *Amended Complaint at Law*, ¶ 18).

---

1. While plaintiff acknowledges that her § 1983 claims have been dismissed, and she is not seeking to reassert them, she nevertheless includes them in her amended complaint under Count III. (*Plaintiff's Reply to Defendant's Response to Plaintiff's Rule 15(a) Motion*, at 8). In addition, throughout her motion and amended complaint, she alternately and erroneously refers to the defendant as "North Central Park College" or "North Park College." These portions of her motion and amended complaint are hereby stricken.

During a team luncheon on November 17, 2000, plaintiff voiced her opposition to homosexuality. According to plaintiff, both Olson and Seremet told her not to express her opinion on the subject. (*Complaint at Law*, ¶ 20; *Amended Complaint at Law*, ¶ 20). Plaintiff alleges that, shortly thereafter, she overheard Seremet and another player speculating as to plaintiff's sexual preferences. (*Complaint at Law*, ¶ 21; *Amended Complaint at Law*, ¶ 21). She also alleges that Seremet repeatedly talked to plaintiff about lesbian activity in an effort to "indoctrinate" her. (*Complaint at Law*, ¶ 21; *Amended Complaint at Law*, ¶ 21). Plaintiff claims that, because she resisted "lesbian doctrinarian," Olson decreased her playing time in favor of an inferior player. (*Complaint at Law*, ¶ 22; *Amended Complaint at Law*, ¶ 22). Olson also told plaintiff she was no longer allowed to wear ribbons in her hair because it was "too feminine." (*Complaint at Law*, ¶ 23; *Amended Complaint at Law*, ¶ 23). Plaintiff claims that, as a result of indoctrination efforts, dress code requirements, and unbalanced personal criticism, she was forced to leave the team. (*Complaint at Law*, ¶ 25; *Amended Complaint at Law*, ¶ 25). According to plaintiff, Olson was seen laughing and celebrating when plaintiff quit. (*Complaint at Law*, ¶ 26; *Amended Complaint at Law*, ¶ 26).

According to both the original and amended complaint, in December of 2000, plaintiff attempted to speak to the athletic director, Walter Johnson, about her treatment in person and left a phone message which he never returned. (*Complaint at Law*, ¶ 27; *Amended Complaint at Law*, ¶ 27). Plaintiff's parents wrote him a letter about the situation on May 4, 2001, with copies going to the president of the college and the board of trustees. (*Complaint at Law*, ¶ 27; *Amended Complaint at Law*, ¶ 27). Shortly thereafter, the college asked for Coach Olson's resignation and, when she refused, terminated her. (*Complaint at Law*, ¶ 28; *Amended Complaint at Law*, ¶ 28). The athletic director then promoted Karen Seremet to fill the vacancy. (*Complaint at Law*, ¶ 29; *Amended Complaint at Law*, ¶ 29).

According to plaintiff, in September of 2001, she attempted to resume contact with the team by playing basketball in an "open gym," but was prevented from doing so by Seremet. (*Complaint at Law*, ¶ 30; *Amended Complaint at Law*, ¶ 30). During the last week of October in 2001, plaintiff asked to meet with Seremet. (*Complaint at Law*, ¶ 31; *Amended Complaint at Law*, ¶ 31). At that meeting, plaintiff alleges that Seremet told her that because she had not performed the off-season recruiting and fund-raising that the athletic director had told her and her mother was required, she would not be allowed to rejoin the team. (*Complaint at Law*, ¶ 31; *Amended Complaint at Law*, ¶ 31). Plaintiff claims that neither she nor her mother had been informed of such requirements. (*Complaint at Law*, ¶ 31; *Amended Complaint at Law*, ¶ 31).

Plaintiff seeks to add two counts to her original complaint. In the retaliation count she now seeks to add to her complaint, she contends that defendants refusal to allow her to rejoin the team was in retaliation for her complaints about sexual discrimination and harassment. (*Amended Complaint at Law*, Count II). She also contends that the defendants' conduct amounted to a breach of contract, which was set forth in the college's catalogs, handbooks, and policy statements, and which prohibited discrimination on the basis of sexual orientation. (*Amended Complaint at Law*, Count III).

## II. ANALYSIS

While Federal Rule of Civil Procedure 15(a) instructs the courts to give

leave to amend a complaint freely "when justice so requires," it does not mandate that leave be granted in every case. *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir.2002). In particular, a district court may deny a plaintiff leave to amend her complaint if there is undue delay, bad faith, dilatory motive, or if the amendment is futile, or will result in undue prejudice to the opposing party. *Id.* In this case, review of plaintiff's proposed amendments demonstrates that they would be futile and her Rule 15(a) motion must be denied.

### A. Harassment "On the Basis of Sex" and Retaliation under Title IX

■ In her original complaint, filed over a year and a half ago, plaintiff claimed that defendants subjected her to a course of sexual harassment in violation of Title IX. Now, she seeks to add the additional claim that defendants retaliated against her when she complained about this treatment, also in violation of Title IX. That statute provides that "[n]o person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). In *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), the Supreme Court determined that Title IX's prohibition against discrimination was implicated in cases involving sexual harassment. 503 U.S. at 75, 112 S.Ct. at 1037. In so doing, the Court relied on a Title VII case, *Meritor Savings Bank, FSB v. Vinson. Franklin*, 503 U.S. at 75, 112 S.Ct. at 1037 (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Since then, federal courts have looked to Title VII precedent to inform their analyses of sexual discrimination claims under Title IX. *See Frazier v. Fairhaven School Committee*, 276 F.3d 52, 66 (1st Cir.2002) (same-sex harassment); *Doe v. University of Illinois*, 138 F.3d 653, 665 (7th Cir.1998), *vacated*, 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1028 (1999) (hostile environment); *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 248–249 (2nd Cir.1995) (sexual harassment by teacher); *Preston v. Commonwealth of Virginia ex rel. New River Community College*, 31 F.3d 203, 206 (4th Cir.1994) (employment discrimination). Accordingly, Title VII precedent informs our analysis of whether the protections of Title IX extend to plaintiff's proposed retaliation claim.

■ Title VII, and presumably Title IX, protect persons from not only discrimination on the basis of sex, but also from retaliation for complaining about the types of discrimination they prohibit.[2] *Hamm*, 332 F.3d at 1066; *Hamner*, 224 F.3d at 704. To advance such a claim, "it is sufficient if the plaintiff has a sincere and reasonable belief that [s]he is opposing an unlawful employment practice." *Hamner*, 224 F.3d at 706–07. Thus, even if the discrimination or harassment at issue does not reach a degree sufficiently severe to implicate that statutes' protections, a retaliation claim may, nevertheless, be valid. 224 F.3d at 707. But, as the court has made clear, "the complaint must involve discrimination that is prohibited by [the statute]." *Id.* As the Seventh Circuit has explained, "[i]f a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then [her] sincere belief that [she] opposed an unlawful practice cannot be reasonable." *Id.* In

---

2. It would appear that just one appellate court has found otherwise, the Eleventh Circuit in *Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1344–46 (11th Cir.2002)("no indication that Congress intended Title IX to prevent or redress retaliation").

this case, plaintiff alleges that she suffered same-sex discrimination and harassment as a result of being a heterosexual. When she opposed this conduct, according to her amended complaint, the defendants retaliated against her. The issue, then, is whether Title IX prohibits the type of discrimination of which she complains.[3] Resolution of this question requires an examination of not only plaintiff's proposed retaliation claim, but her original same-sex harassment claim as well.

Federal courts struggled with the issue of same-sex harassment in a Title VII context until the Supreme Court's decision in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). There, the Court stated that it saw no justification in statutory language or Supreme Court precedent for a categorical rule excluding same-sex harassment claims from the coverage of Title VII. 523 U.S. at 79, 118 S.Ct. at 1002, 118 S.Ct. 998. The Court cautioned, however, that the sexual harassment must meet the statutory requirement that it constitute discrimination because of sex. 523 U.S. at 81, 118 S.Ct. at 1002. Illustrating this requirement, the Court offered examples of what form such sexual harassment might take:

> Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not

have been made to someone of the same sex. The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct com-parative[sic] evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace.

523 U.S. at 80–81, 118 S.Ct. at 1002. The Court did not suggest that these examples are exhaustive, but they are instructive, and it is clear that plaintiff's allegations do not fit any of them. First, while plaintiff alleges her harassers were homosexual, she does not allege she was the target of sexual proposals. Second, there is no suggestion that the coaches were motivated by a hostility toward females in an athletic setting. Indeed, plaintiff alleges that certain females, less talented than she, received favored treatment. Finally, as plaintiff's complaint and amended complaint deal with an all-female milieu, the last example is inapplicable.

---

**3.** Plaintiff contends she had a reasonable belief that her coaches had acted in violation of the law, relying on *Dey v. Colt Const. & Development Co.*, 28 F.3d 1446 (7th Cir.1994). (*Plaintiff's Reply to Defendant's Response to Plaintiff's Rule 15(a) Motion*, at 4). In so doing, however, plaintiff confuses the question of whether the severity of the harassment rises to a level actionable under the statute with the question of whether the statute tar-

gets the impetus for the harassment. In *Dey*, the court held that a plaintiff's Title VII retaliation claim might survive even if the instances of gender-based harassment the plaintiff detailed in her main claim were not sufficiently severe to depict a hostile environment. 28 F.3d at 1457–58. Thus, the *Dey* court did not address the issue dealt with in *Hamm* or *Hamner*, or that we deal with here.

We noted that the *Oncale* Court's list of actionable same-sex harassment was instructive rather than exhaustive. Yet another example of actionable same-sex harassment—again, in a Title VII context—emerged from the Seventh Circuit's decision in *Doe v. City of Belleville,* 119 F.3d 563 (7th Cir.1997). That case involved a claim of male, same-sex harassment, in which the plaintiff, a sixteen-year-old who happened to wear an earring, was subjected to constant, mostly verbal, abuse by his significantly older male co-workers. 119 F.3d at 567. They called him derogatory names for homosexual, questioned his gender, and threatened him with sexual assault. *Id.* On one occasion a co-worker grabbed his crotch "to finally find out if [he was] a girl or a guy." *Id.* The court found this type of same-sex harassment to be actionable discrimination based on sex, relying in part on the Supreme Court's decision in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), which held that Title VII did not permit a female employee to be discriminated against because her dress, appearance, or conduct did not conform to stereotypical ideas of femininity. 490 U.S. at 251, 109 S.Ct. at 1790. The Seventh Circuit analogized that, "[i]n the same way, a man who is harassed because his voice is soft, his physique is slight, his hair is long . . . is harassed 'because' of his sex." *Doe,* 119 F.3d at 581. Thus, the court found that "gender stereotyping" establishes the link to a plaintiff's sex that Title VII requires. *Id.* Harassment that relies "upon stereotypical notions about how men and women should appear and behave," accord-

ing to the court, reasonably suggests that it can be attributed to sex. *Id.* This "gender stereotype" harassment, however, must be distinguished from harassment based on sexual orientation or preference.

In the context of Title VII, the Seventh Circuit has consistently held that harassment based on one's sexual preference or orientation is not actionable. *Hamm v. Weyauwega Milk Products, Inc.,* 332 F.3d 1058, 1062 (7th Cir.2003); *Spearman v. Ford Motor Co.,* 231 F.3d 1080, 1084 (7th Cir.2000); *Hamner v. St. Vincent Hosp. and Health Care Center,* 224 F.3d 701, 707 (7th Cir.2000); *Ulane v. Eastern Airlines, Inc.,* 742 F.2d 1081, 1085 (7th Cir.1984). Instead, in same-sex harassment cases, the court has maintained that the central question is whether harassment occurred " 'because of a plaintiff's sex.' " *Hamm,* 332 F.3d at 1062 (*quoting Hamner,* 224 F.3d at 704). In other words, same-sex harassment is actionable when it constitutes discrimination " 'against women because they are women and against men because they are men.' " *Spearman,* 231 F.3d at 1084 (*quoting Ulane,* 742 F.2d at 1085). Under this line of reasoning, the Seventh Circuit has taken pains to differentiate between discrimination or harassment motivated by gender stereotyping—which is actionable—and discrimination or harassment motivated by sexual orientation—which is not.[4]

The differentiation is not always obvious. In *Spearman,* the plaintiff, who was a homosexual but had not made that known at his job, claimed he was subjected to harassment because his "co-workers perceived him to be too feminine to fit the

**4.** Certainly, in the wake of *Price Waterhouse,* the Seventh Circuit is not alone in this task. *See Bibby v. Phila. Coca Cola Bottling Co.,* 260 F.3d 257, 264 (3rd Cir.2001) (discrimination is "because of sex" where "harasser was acting to punish the victim's non-compliance with gender stereotypes"); *Nichols v. Azteca Restaurant Enterprises, Inc.,* 256 F.3d 864,

874–75 (9th Cir.2001) (systemic abuse directed at plaintiff reflected belief that he did not act as a man should act was actionable); *Schmedding v. Tnemec Co.,* 187 F.3d 862, 865 (8th Cir.1999) (rumors falsely labeling plaintiff as homosexual did not transform case into harassment based on sexual preference).

male image" at his auto plant. 231 F.3d at 1085. The plaintiff was referred to as a "bitch," was compared to a famous drag queen, and was assigned tasks "traditionally reserved for women." *Id.* He was also referred to as "gay" or a "fag." 231 F.3d at 1086. One of plaintiff's harassers claimed that co-workers had observed plaintiff looking them over "like a man would take a full look at a woman." 231 F.3d at 1082. Overall, however, the court felt the record demonstrate that the plaintiff was maligned because of his "apparent homosexuality," and that his harassers were motivated by their "suspicion of [his] sexual orientation and his perceived desire for some sort of intimacy with them." 231 F.3d at 1085. Similarly, in *Hamm,* the court attributed the plaintiff's harassment to his co-workers' apparent belief about his sexual orientation; although in that case, the plaintiff was not a homosexual. 332 F.3d at 1062–65. The plaintiff there was called a "faggot", "bisexual", and a "girl scout" and, like the plaintiff in *Spearman,* co-workers accused him of "sizing [them] up." 332 F.3d at 1060. While the plaintiff argued that his case was distinguishable from *Spearman* in that he was not a homosexual, the court refused to focus on a plaintiff's sexuality in determining whether he was a victim of gender stereotyping. 332 F.3d at 1065.

As the Seventh Circuit has acknowledged, filtering discrimination based on failure to adhere to gender stereotypes and discrimination based on sexual orientation renders the picture of what might constitute a claim for gender stereotyping anything but focused. *Hamm,* 332 F.3d at 1065 n. 5. Stereotypical notions about how men and women should behave will often necessarily blur into ideas about heterosexuality and homosexuality. A homosexual male exhibiting an attraction toward other males in the workplace would not be behaving as a man would stereotypically be expected to behave. Yet, in *Spearman,*

when the plaintiff purportedly looked at men the way a man would take a "full look at a woman" and gave his co-workers the impression that he was a homosexual, his case was no longer about gender stereotypes. It appears that the line is crossed once the plaintiff's behavior or appearance no longer strikes his harassers as merely effeminate—assuming the plaintiff is a male—and begins to give them the impression that he is a homosexual. One would assume the same would be true of a case involving a female plaintiff exhibiting masculine traits, although it is easy to imagine that a case involving such a plaintiff would involve a full complement of lesbian epithets, making it difficult to draw the line.

▮ In this case, the line is not as difficult to draw, as plaintiff's allegations leave no room for doubt about the motivation of her purported harassers. According to her complaints, the defendants began their course of harassment when she expressed her opposition to homosexuality. Plaintiff claims she was pressured to change those views or to keep them to herself, and that the defendants' course of harassment was designed with the hope of achieving those ends. Plaintiff's behavior, or defendants' impressions of her behavior, unlike the plaintiffs in *Spearman* or *Hamm,* was not a precipitating factor in the course of harassment. Instead, plaintiff's allegations indicate it was her beliefs on homosexuality—and perhaps not even her heterosexuality—that motivated her harassers. That is not a claim for sexual harassment under a gender stereotyping theory. It would probably not even be a claim for sexual harassment if discrimination based on sexual orientation were cognizable. It appears plaintiff has tried to wedge a protected speech claim where it will not fit: into Title IX's prohibition against discrimination on the basis of sex.

Even if the protected speech tenor of plaintiff's complaint and amended com-

plaint were ignored, they could still not be interpreted as stating a claim for gender stereotyping. Plaintiff fit, it would seem, the stereotypical notions about how women should appear and behave, and this is what made her a target. In fact, she contends she was chastised for wearing ribbons in her hair because it was "too feminine." There is simply nothing in plaintiff's complaint or amended complaint that suggests she was a victim of "gender stereotyping."

■ Tellingly, plaintiff sums up her case this way in her reply brief: "[h]ad she been homosexual, this case would not exist." (*Plaintiff's Reply to the Defendant's Response*, at 4).[5] Thus, her own characterization of her case is no different from the court's characterization: her complaints are simply not about harassment based on gender stereotyping. Regarded in the best of lights, they are about harassment based on sexual preference, which is not actionable under Title VII or Title IX. In fact, arguably, they are about protected speech, which falls even farther from the purview of those provisions. In either case, the harassment that plaintiff opposed did not violate Title IX. *Hamm*, 332 F.3d at 1066; *Hamner*, 224 F.3d at 707. Consequently, she cannot amend her complaint to allege a claim for retaliation because such amendment would not survive a motion to dismiss.

That being said, it is clear from our review of plaintiff's original sexual harassment claim—a review necessitated by her proposed addition of a retaliation claim—that it, too, would not survive a motion to dismiss. Plaintiff's sexual harassment claim is, as already discussed, based solely on sexual orientation. Throughout her complaint and amended complaint, there is neither suggestion nor intimation that the harassment she suffered was motivated by anything other than her sexual orientation. Although her proposed retaliation claim raised the issue of whether her harassment claim was cognizable under Title IX, and she had the opportunity to argue the matter in her briefs supporting her motion to amend, she maintained that her case was about sexual orientation. Throughout her reply brief, she argues that "she was driven off the team because the coaches only wanted gay players and/or gay friendly players on the team." (*Plaintiff's Reply to Defendant's Response to Plaintiff's Rule 15(a) Motion*, at 4). She complains that she missed nearly two basketball seasons because "she would not blend into the team's homosexual environment" and because she "was against homosexuality." (*Plaintiff's Reply to Defendant's Response to Plaintiff's Rule 15(a) Motion*, at 4–5). Contending that "the homosexual and homosexual friendly coaches treated [her] differently because she was not homosexual or homosexual friendly," plaintiff submits that "[t]he sexual orientation of every coach and the applicable player is relevant" to this case. (*Plaintiff's Reply to Defendant's Response to Plaintiff's Rule 15(a) Motion*, at 7). And, again, most tellingly, she explains that "[h]ad she been homosexual, this case would not exist." (*Plaintiff's Reply to Defendant's Response to Plaintiff's Rule 15(a) Motion*, at 4). Plaintiff's complaint, amended complaint,

---

**5.** Curiously, at another point in her brief, plaintiff argues that the case concerns much more than sexual orientation. (*Plaintiff's Reply to Defendant's Response to Plaintiff's Rule 15(a) Motion*, at 5). Plaintiff offers no explanation, however, of what else this case might concern. In fact, she focuses on the sexual orientation of coaches and players in the preceding paragraph of her brief. (*Id.*). In her only effort to distinguish her claims from claims based on sexual orientation, she submits that her complaints are about sexual harassment, sexual discrimination, and views on homosexuality. (*Id.*). While this might be true, there is nothing in plaintiff's complaint or her brief that gives any hint that the conduct of which she complains was motivated by anything other than sexual orientation.

and her arguments leave no doubt at all that this case is about sexual orientation and nothing else. Accordingly, under these circumstances, and in view of the fact that plaintiff has already argued at length as to the nature of her sexual harassment claim, we find it appropriate to dismiss that claim, Count I, *sua sponte*.[6]

### B. *State Law Breach of Contract Claim*

Plaintiff also seeks to add a breach of contract claim to her complaint. According to plaintiff, a valid and enforceable contract existed between her and the college "consisting of the Defendant North [Central College's] catalogs, manuals handbooks, policy statements and brochures." (*Amended Complaint at Law*, Count VI). More specifically, plaintiff claims that the student handbook prohibited discrimination in athletic programs on the basis of sex and sexual orientation, and that the faculty handbook prohibited faculty members from engaging in discrimination on the basis of sex and sexual orientation. (*Amended Complaint at Law*, Count VI). Given our disposition of the plaintiff's Title IX sexual harassment and retaliation claims, however, we must deny her motion to add this claim.

■ Dismissal of plaintiff's sexual harassment and retaliation claims leaves only state law claims in this matter, over which the court had supplemental jurisdiction. 28 U.S.C. § 1367(a). With the sole basis for invoking federal jurisdiction gone, the general rule is that the district court should relinquish jurisdiction over pendent state law claims rather than resolve them on the merits. 28 U.S.C. § 1367(c)(3); *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 300 (7th Cir.2003). Plaintiff's breach of contract claim, then, would not survive a motion to dismiss and, accordingly, plaintiff's motion to add that claim is denied as futile.[7] In addition, her

---

6. The court recognizes that *sua sponte* dismissals are generally discouraged. *Stewart Title Guar. Co. v. Cadle, Co.*, 74 F.3d 835, 836 (7th Cir.1996). This discouragement is born of two concerns. The first is the fear that the dismissal will deprive the losing party of the opportunity to present arguments against dismissal. *Id.* In this case, however, plaintiff has already argued about the nature of her sexual harassment claim in support of her motion to amend. In addition, while she raised the possibility that her case concerned more than sexual orientation, she was unable to explain her position. (*Plaintiff's Reply to Defendant's Response to Plaintiff's Rule 15(a) Motion*, at 5; *see n. 5, supra*). The other concern is that the dismissal will be contrary to judicial efficiency. *Id.* Should the court allow plaintiff's claim to stand, however, the result will only be a revisiting of all the issues already examined in connection with plaintiff's motion to amend when the defendants file the inevitable Fed.R.Civ.P.12(b)(6) motion. Thus, in that respect, a *sua sponte* dismissal here will serve judicial efficiency.

7. In addition to the issue of supplemental jurisdiction, the court is concerned with the timing of plaintiff's breach of contract claim.

The Seventh Circuit has urged district courts to consider whether motions to amend complaints filed long after the original complaint and based solely on previously known information are being presented in a desperate effort to protract the litigation and complicate the defense. *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir.1996). Plaintiff's proposed amendment comes more than seventeen months after she filed her original complaint and on the day discovery was closed. Furthermore, the materials upon which she bases her claim—student handbooks and college catalogs—were in her possession since the fall of 1998. Under such circumstances, the burden rests upon the movant to show a valid reason for delay. *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 (7th Cir.1995). Here, plaintiff offers no explanation as to why this count has only recently materialized, but merely argues that "[s]eventeen months does not make a case old." (*Plaintiff's Reply to Defendant's Response to Plaintiff's Rule 15(a) Motion*, at 2). On the contrary, the court in *Glatt* described a motion to amend as unacceptable when "filed long after the original complaint" after the passage of sixteen months. 87 F.3d at 194.

two remaining state law claims—intentional and negligent infliction of emotional distress under Counts IV and V—are also dismissed under § 1367(c)(3).

### III. CONCLUSION

When plaintiff initiated this lawsuit, she alleged that she had been harassed due to her sexual orientation. In her motion to amend, she sought to add a retaliation claim and a breach of contract claim, seventeen months later, despite knowing the information upon which she based these claims all along. Plaintiff's proposed retaliation claim was, necessarily, inextricably tied to her sexual harassment claim, and her motion to amend consequently prompted an examination of her original claim. Because that examination failed to reveal the slightest implication that her claim might be based on anything other than sexual orientation, which is not protected under Title IX, her motion to add the retaliation claim must be denied, and her original harassment claim must be dismissed *sua sponte*. As a consequence of that, the court declines to exercise supplemental jurisdiction over her proposed breach of contract claim, as well as her remaining state law claims.

For the foregoing reasons, plaintiff's motion to amend her complaint is DENIED, and her complaint is hereby dismissed *sua sponte*.