SYKES, Circuit Judge.
Ryan'Lord claims that he was sexually harassed by male coworkers at High Voltage Software, Inc., and that High Voltage fired him for complaining about it. High Voltage responds that the conduct Lord complained about wasn’t' sexual harassment and that it fired Lord for other reasons: failing to properly report his concerns, excessive preoccupation with his coworkers’ performance, and insubordination. The district court concluded that Lord’s claims under Title VII for hostile work environment and retaliation failed as a matter of. law.' The judge accordingly entered summary judgment for High Voltage. We affirm. Lord has not shown that he was harassed because of his sex, nor has he called into doubt the sincerity of his employer’s justifications for firing him.
I. Background
High Voltage develops software for video games. In September 2006 the company hired Lord as an associate producer and initially assigned him to its Omni team, a working group named after a game then under development. Lord claims that in January 2007 his male team members began teasing him about his supposed interest in a female audio engineer. His coworkers would comment that Lord had “the audio bug” or ask if he had “[taken] care of the audio bug” whenever the female engineer was in the vicinity. According to Lord, the phrase “audio bug” had sexual connotations that referred to his rumored interest in his female coworker.
*560 Lord first formally complained about the audio-bug joke in a June 5, 2007 email to Human Resources Director Maggie Boh-len. Bohlen initiated an investigation and then met with Lord ten days later to discuss the results. She explained that the audio-bug joke did not amount to sexual harassment but directed Lord to report any further incidents of harassment to human resources “immediately.”
Following Lord’s meeting with Bohlen, the company’s president, John Kopecky, reassigned Lord to a different development team to avoid further “team dynamic issues.” Lord also met with Kopecky and Executive Producer Chad Kent for a regular performance review. During that meeting, Kopecky and Kent addressed Lord’s recent complaints about harassment. They explained that High Voltage is a creative workplace where “humor is a common method of communication.” But they also said that if Lord felt someone’s comments crossed the line, he should ask that person to stop and notify Kent immediately if the comments persisted.
Lord’s new working group was known as the Responder team, and Lord began sharing an office with Nick Reimer, another associate producer and fellow Responder team member. Lord claims that between July 18 and July 27, Reimer initiated unwanted physical contact on four separate occasions. Fust, on July 18 Reimer poked Lord in the buttocks as Lord was bending over to put coins into a vending machine. Next, on July 23 while Lord was talking with another coworker, Reimer slapped Lord’s buttocks as he walked past. Two days later Reimer again slapped Lord’s buttocks while Lord was purchasing something from the vending machine. Finally, on July 27 Reimer grabbed Lord between his legs while Lord was writing on a white board..
Lord did not report any of these incidents when they occurred, though he did tell Reimer to stop. Lord’s first formal complaint about Reimer came on July 30, 2007, when he went to the office on his day off to voice his concerns to Bohlen. Before talking to Bohlen, however, Lord sought out two coworkers who had witnessed Reimer’s conduct and recorded statements from each. Lord also encountered Kent, the Executive Producer, but said nothing about Reimer’s behavior; he later explained that he was worried about losing his job for being overly concerned about Reimer. Lord reported Reimer’s conduct to Bohlen, who forwarded the complaints to Kopecky.
On July 31 Kent issued an unrelated disciplinary “writeup” to Reimer and Lord stemming from a DVD malfunction that occurred during a presentation Kent was giving. Kent thought that both Reimer and Lord were responsible for the technical malfunction, but he was mistaken about Lord’s degree of involvement. Lord immediately responded with a heated email to Kent accusing the company of retaliating against him for reporting sexual harassment by a coworker; he also said he was “very close to filing a complaint with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission.” After discussing the matter with Lord and investigating the DVD mishap further, Kent promptly withdrew the write-up and apologized for “misunderstanding [Lord’s] level of involvement with this issue.”
The next day, August 1, High Voltage fired both Reimer and Lord. According to personnel records documenting the reasons for the teiminations, Reimer was fired for harassing Lord, and Lord was fired for four reasons: (1) failing to immediately report incidents of harassment to Bohlen as instructed; (2) failing to report *561 incidents of harassment to Kent, again as specifically instructed; (3) obsessively “tracking” the “performance, timeliness, and conduct” of his coworkers; and (4) insubordination. The insubordination charge had to do with Lord’s ill-tempered response to Kent’s mistaken disciplinary write-up over the DVD malfunction. Boh-len thought it was “inappropriate for [Lord] to threaten the company[ ] instead of just correcting the mis-information on the write-up.”
After losing his job, Lord filed an administrative complaint with the EEOC and received notice of his right to sue. He then brought this action against High Voltage alleging claims for discrimination and retaliation in violation of Title VTI, 42 U.S.C. § 2000e-2. His discrimination claim was premised on allegations that the company created a hostile work environment. Lord also alleged disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12112, and several state-law claims.[1]
High Voltage moved for summary judgment on all claims. The judge granted the motion, concluding that Lord lacked sufficient evidence to permit any of his claims to go forward. Lord appeals, challenging only the decision on the Title VII claims.
II. Discussion
We review the district court’s order granting summary judgment de novo, construing the evidence and drawing all reasonable inferences in Lord’s favor. Smith v. Chi Transit Auth., 806 F.3d 900, 904 (7th Cir. 2015). Summary judgment is appropriate if the record presents no genuine issues of material fact and High Voltage is entitled to judgment as a matter of law. Fed. R. Crv. P. 56(a).
A. Discrimination
Title VII prohibits discrimination “against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, sex, or national origin.” 42 U.S.C. § 2000e-2(a)(1), This prohibition encompasses the “creation of a hostile work environment” that is severe or pervasive enough to affect the terms and conditions of employment. Orton-Bell v. Indiana, 759 F.3d 768, 773 (7th Cir. 2014) (quoting Vance v. Ball State Univ., — U.S. -, 133 S.Ct. 2434, 2441, 186 L.Ed.2d 565 (2013)). A hostile-work-environment claim requires proof of four elements: (1) the plaintiffs workplace was both subjectively and. objectively offensive; (2) the plaintiffs sex was the cause of the harassment; (3) the harassment was severe or pervasive; and (4) there is a basis for employer liability. Id.
Citing the audio-bug joke and Reimer’s unwanted physical contact, Lord maintains that the conduct of his male coworkers created a hostile work environment. That claim is a nonstarter because Lord has not established that his coworkers harassed him because of his sex.
Same-sex harassment' claims are cognizable under Title VII provided that “the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted ‘discrimina[tion] ... because of ... sex.’ ” Oncale v. Sundoimer Offshore Servs., Inc., 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting 42 U.S.C. § 2000e-2(a)(1)) (alteration in original). Of course, that requirement applies to all claims of employment- *562 based sexual harassment, whether same sex or opposite sex. Id. at 80, 118 S.Ct. 998 (“The critical issue, Title VU’s text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.”) (quotation marks omitted). But in opposite-sex harassment cases involving “explicit or implicit proposals of sexual activity,” the inference of discrimination is easier to draw because “it is reasonable to assume those proposals would not have been made to someone of the same sex.” Id. The same does not hold true for same-sex harassment cases absent some evidence that the harasser was homosexual. Id.; see also Hamm v. Weyauwega Milk Prods., Inc., 332 F.3d 1058, 1062 (7th Cir. 2003) (“Therefore, in same-sex harassment cases, the central question is whether the harassment occurred ‘because of the plaintiffs sex.’ ”).
In Oncale the Supi-eme Court offered two other examples of conduct that might support an inference of discrimination on the basis of sex in the context of a same-sex harassment claim. The first is when a harasser uses “such sex-specific and derogatory terms” as to make it clear that he “is motivated by a general hostility to the presence of [members of the same sex] in the workplace.” Oncale, 523 U.S. at 80, 118 S.Ct. 998. The second is when the plaintiff offers “direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace.” Id. at 80-81, 118 S.Ct. 998. We’ve noted in the past that there’s no reason to think these examples are exhaustive. Shepherd v. Slater Steels Corp., 168 F.3d 998, 1009 (7th Cir. 1999). “What matters ... is not whether the facts ... correspond exactly to any of the three examples the Supreme Court has identified, but whether a reasonable factfinder could infer from those facts that [the plaintiff] was harassed ‘because of his sex.” Id.
Lord argues that the judge went astray in his case by requiring his same-sex harassment claim to “fit neatly” into one of the three scenarios that Oncale describes. That argument overlooks a more fundamental shortcoming: There is no evidence from which a trier of fact could infer that he was harassed became of his sex. Nothing suggests that Reimer was homosexual, and Reimer’s behavior was not so explicit or patently indicative of sexual arousal that a trier of fact could reasonably draw that conclusion. Of id. at 1009-10. And neither the audio-bug joke nor Reimer’s conduct reflect a general hostility to the presence of men in the workplace: Lord points to no facts suggesting that only male employees at High Voltage were the objects of this sort of teasing.
Instead, Lord relies entirely on the fact that the audio-bug joke and Reimer’s conduct had sexual overtones. But the Supreme Court has said that’s not enough. See Oncale, 523 U.S. at 80, 118 S.Ct. 998 (“We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations.”). “Sexual horseplay differs from sex discrimination, and Title VII covers only discriminatory conduct.” Shafer v. Kal Kan Foods, Inc., 417 F.3d 663, 666 (7th Cir. 2005). Absent some evidence of the latter, the former is insufficient to support a Title VII claim. Id.; Orton-Bell, 759 F.3d at 775; see also Johnson v. Hondo, Inc., 125 F.3d 408, 412-13 (7th Cir. 1997). Because no reasonable jury could conclude that Lord was targeted for harassment because of his sex, summary judgment for High Voltage was appropriate.
*563 B. Retaliation
Title VII also prohibits retaliation against employees who engage in statutorily protected activity by opposing an unlawful employment practice or participating in the investigation of one. 42 U.S.C. § 2000e-3(a); see also Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc., 224 F.3d 701, 704 (7th Cir. 2000). A retaliation claim requires proof that the plaintiff suffered an adverse employment action because of his statutorily protected activity; in other words, the plaintiff must prove that he engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two. Castro v. DeVry Univ., Inc., 786 F.3d 559, 564 (7th Cir. 2015).
Lord contends that High Voltage fired him because he complained to the human-resources department about Reimer’s conduct and the audio-bug joke. The judge concluded that Lord’s complaints about his coworkers did not amount to protected activity because they did not concern the type of conduct that Title VII prohibits. We agree. We also conclude that Lord has failed to produce evidence of causation.
To the first point, a retaliation • claim isn’t doomed simply because the complained-of conduct wás not in fact an unlawful employment practice; rather, the plaintiff must have “a sincere and reasonable belief that he is opposing an unlawful practice.” Hamner, 224 F.3d at 706-07 (emphasis added). “The objective reasonableness of the [plaintiffs] belief is not assessed by examining whether the conduct was persistent or severe enough to be unlawful, but merely whether it falls into the category of conduct prohibited by the statute.” Magyar v. St. Joseph Reg’l Med. Ctr., 544 F.3d 766, 771 (7th Cir. 2008). That determination requires us to ask whether the complained-of conduct entailed a motive that Title VII prohibits. See id.; Hamm, 332 F.3d at 1066; Spearman v. Ford Motor Co., 231 F.3d 1080, 1086 n.5 (7th Cir. 2000); Hamner, 224 F.3d at 707.
As we’ve already explained, although Lord’s complaints concerned workplace banter and conduct that had sexual overtones, no evidence suggests that he was harassed because of his sex. Without evidence of a prohibited motive, Lord’s belief that he was complaining about sexual harassment, though perhaps sincere, was objectively unreasonable. Hamner, 224 F.3d at 707-08. Accordingly, Lord’s retaliation claim fails for lack of evidence that he engaged in protected activity.
But even if we assume that Lord’s complaints about workplace harassment were protected activity, he has not shown that he was fired because of those complaints. A retaliation claim requires proof of causation, which in this context means but-for causation. Univ. of Tex. Sw. Med. Ctr. v. Nassar, — U.S. -, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013); see also Hobgood v. Ill. Gaming Bd., 731 F.3d 635, 643 (7th Cir. 2013). The parties discuss the “direct” and “indirect” evidence of causation and debate whether the record demonstrates a “convincing mosaic” establishing retaliatory discharge, but we have recently jettisoned that approach in favor of a more straightforward inquiry: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the- discharge? Ortiz v. Werner Enters., Inc., No. 15-2574, 834 F.3d 760, 765, 2016 WL 4411434, at *4 (7th Cir. Aug. 19, 2016) (“Th[e] legal standard ... is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiffs race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.”).
*564 Lord relies entirely on evidence of suspicious timing. He was fired within two days of his complaint about Reimer’s conduct and only one day after telling Kent that he was “close to filing a complaint with the [Illinois Department of Human Resources] and EEOC.” Suspicious timing by itself will rarely support an inference of retaliation, but it may do so “[w]hen an adverse employment action follows on the close heels of protected expression and the plaintiff can show the person who decided to impose the adverse action knew of the protected conduct.” Culver, 416 F.3d at 546 (quoting Lalvani v. Cook County, 269 F.3d 785, 790 (7th Cir. 2001)). The record supports drawing the inference here. Bohlen and Kopecky fired Lord two days after he talked to Bohlen about Reimer. Kopecky was aware of Lord’s complaint because Bohlen immediately forwarded it to him.
Our inquiry doesn’t end there, however. When confronted with circumstantial evidence of a retaliatory motive, the employer may show that the employee would have been fired even absent his complaints about harassment. See Culver, 416 F.3d at 547-48; see also Argyropoulos v. City of Alton, 539 F.3d 724, 736 n.6 (7th Cir. 2008); Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 643 (7th Cir. 2002); McClendon v. Ind. Sugars, Inc., 108 F.3d 789, 797-99 (7th Cir. 1997). If High Voltage can make that showing, then the alleged “retaliatory motive, even if unchallenged, was not a but-for cause of [Lord’s] harm.” Stone, 281 F.3d at 643. Of course, an employer’s proffered justifications are always susceptible to attack, and Lord can avoid summary judgment if a material factual dispute exists on the question of pretext. Argyropoulos, 539 F.3d at 736. “Summary judgment is appropriate only if a reasonable fact finder would be compelled to believe [High Voltage’s] explanation.” Culver, 416 F.3d at 547.
As we’ve noted, the relevant personnel records list several nonretaliatory reasons for High Voltage’s decision to fire Lord. These include his failure to immediately report allegations of harassment to Bohlen and Kent, as they had instructed him to do; his fixation on his coworkers’ “performance, timeliness, and conduct”; and insubordination (the testy email in response to Kent’s mistaken disciplinary write-up).
Lord has no evidence that calls these reasons into question. “Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] ‘lie, specifically a phony reason for some action.’” Argyropoulos, 539 F.3d at 736 (quoting Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 737 (7th Cir. 2006)). We have repeatedly emphasized that when “assessing a plaintiffs claim that an employer’s explanation is pretextual, we do not ... second-guess[ ] an employer’s facially legitimate business decisions.” Id. (internal quotation marks omitted). An employer’s reasons for firing an employee can be “foolish or trivial or even baseless,” as long as they are “honestly believed.” Culver, 416 F.3d at 547 (quoting Hartley v. Wis. Bell, Inc., 124 F.3d 887, 890 (7th Cir. 1997)).
Rather than casting doubt on the sincerity of High Voltage’s reasons for firing him, Lord merely quibbles with the wisdom of his employer’s decision. For example, he challenges Bohlen’s determination that he waited too long to notify human resources about Reimer’s conduct. He notes that he reported the Reimer incidents just 12 days after they began and only 2 days after the latest one. He does not dispute, however, that Bohlen and Ko-pecky had instructed him to report any such incidents immediately and that he failed to follow these instructions. Likewise *565 Lord questions the company’s judgment that it was “inappropriate” for him to respond to the mistaken disciplinary writeup by threatening to file a lawsuit rather than first trying to resolve the misunderstanding. Whether this particular justification was wise or warranted is beside the point. What matters is whether Bohlen and Kopecky honestly believed it. Lord has no evidence that they did not.
Finally, Lord argues that a reasonable jury could draw an inference of pretext from the company’s shifting explanation of its reasons for firing him. “As a general rule, a reasonable trier of fact can infer pretext from an employer’s, shifting or inconsistent explanations for the .challenged employment decision.” Castro, 786 F.3d at 577. The problem for Lord is that the record doesn’t support his contention that High Voltage’s explanation has shifted. He makes much of the fact that High Voltage fired him for several different reasons. That’s not indicative of pretext. Employment decisions often rest on multiple grounds. See id.
Lord also points to minor semantic variations between Bohlen’s deposition testimony and the written personnel report documenting the reasons for the decision to fire him. In substance, however, Boh-leris testimony is entirely consistent with the written report: Both indicate that Lord was fired for insubordination and his failure to immediately bring allegations of harassment directly to his manager or human resources. See Schuster v. Lucent Techs., Inc., 327 F.3d 569, 577 (7th Cir. 2003) (emphasizing that the employer’s explanation “must actually be shifting and inconsistent to permit an inference of mendacity”); Rand v. CF Indus., Inc., 42 F.3d 1139, 1146 (7th Cir. 1994) (holding that there was no evidence of pretext where the employer’s proffered reasons for firing the plaintiff were consistent “in substance if not word choice”).
In short; the record contains no evidence from which a reasonable jury could infer that'High Voltage’s reasons for firing Lord were pretextual. So even assuming that Lord’s complaints about workplace harassment were protected activity, he is unable to establish but-for causation. The retaliation claim fails as a matter of law.
AFFIRMED.

‘. The ADA claims were predicated on his diagnosis' and treatment for anxiety and depressive disorders.