In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1650

VIRGINIA E. MOURNING,

*Plaintiff-Appellant,*

*v.*

TERNES PACKAGING, INDIANA, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:14-cv-00772-SEB-DML — **Sarah Evans Barker**, *Judge.*

SUBMITTED APRIL 26, 2017 — DECIDED AUGUST 18, 2017

Before WOOD, *Chief Judge*, and RIPPLE and SYKES, *Circuit Judges*.

PER CURIAM. Virginia "Ginger" Mourning appeals the grant of summary judgment for her former employer, Ternes Packaging–Indiana, Inc., on her claims that Ternes fired her because she is a woman, in violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and because she took medical leave that was protected under the Family and Medical Leave Act, 29 U.S.C.

§ 2615. Mourning challenges the district court's determinations that she failed to submit evidence establishing a *prima facie* case for either claim or showing that Ternes's reasons for her discharge were pretextual. We agree with the district court's conclusions and affirm the judgment.

Mourning worked for Ternes Packaging–Indiana, Inc., from 1997 until the company fired her in 2013. Ternes is wholly-owned by Howard Ternes Packaging Company ("Howard Ternes"); both firms provide "supply chain management solutions" to customers. Ternes has only one client—Allison Transmission, Inc.—for which it provides "bundled services," including "clerical support … [,] material control, administrative services for orders, secretarial, shipping, and traffic [support]." At all times relevant to Mourning's case, Ternes was run by a general manager, Eric Frey, who reported to Howard Ternes's director of sales, Carrie Brown. Since 1999, Mourning managed the "Order Administration" division. In that role she oversaw 10 employees. Mourning reported directly to Frey throughout her tenure.

In February 2013, Frey granted Mourning's request for leave under the Family Medical Leave Act to treat her encephalopathy (a treatable brain disease that, she contends, resulted from various medications she took). Mourning returned to work less than two months later. But on March 20, 2013, while Mourning was still on medical leave, eight of her ten subordinates jointly submitted to Frey an "internal complaint" against her. The employees complained that Mourning intimidated and publicly humiliated them, acted unpredictably, and generally micro-managed her team. One of the order administrators filed two additional internal

complaints related to episodes in which she felt publicly humiliated by Mourning.

Before the March 20 submission, Mourning had never been the subject of a written complaint, nor had she ever been disciplined. In each of her annual evaluations, aside from the first after her promotion to manager in 1999, Frey had rated Mourning's performance as above "exceptional," even as recently as her last evaluation in May 2012.

Upon her return from medical leave, Frey showed Mourning her subordinates' complaint, and Mourning responded with a written rebuttal and her own internal complaint against the staff. She carbon-copied Howard Ternes's vice president of finance, thereby alerting the parent company to her subordinates' complaint against her. Around that same time, Brown (Frey's supervisor, from Howard Ternes) visited Ternes for a "routine visit," during which Frey brought up the subordinates' complaint and told Brown that "the department didn't want [Mourning] to come back." Brown then met with a director at Allison Transmission who worked directly with Mourning, and this director told her that Mourning's "performance was not up to his standards," particularly because Mourning was not using "some data systems"—a concern that he had previously discussed with Frey.

These developments prompted Howard Ternes to initiate an investigation into Mourning's performance. It ultimately concluded that she had exhibited "unprofessional conduct toward direct reports" and had "fail[ed] to satisfy customer expectations." Both Brown and Michael Dergis, Howard Ternes's chief operating officer, reviewed information about Mourning's performance; this feedback had come from past

and present order administrators, Frey, and Allison Transmission.

In early April, Dergis and Brown fired Frey and then Mourning. Frey was fired "for his failure to timely inform Ternes Headquarters of the March 20 employee complaint against Mourning and failure to hold Mourning accountable for her unprofessional conduct and poor performance." Mourning was fired based on Dergis's and Brown's conclusion that "Mourning's performance had resulted in neither her order administrators nor her customers wanting to work with her. …" Ternes promoted another female order administrator to take over Mourning's position. The next month Mourning sued Ternes for discriminating against her based on her sex in violation of Title VII and for retaliating against her for taking medical leave in violation of the FMLA. Extensive discovery ensued.

The district court ultimately granted summary judgment on Mourning's Title VII and FMLA claims. Regarding her Title VII claim, the court concluded that she had failed to point to any direct evidence of sex discrimination and that she had not established a claim under the "indirect" method, see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because she did not produce evidence from which it could be inferred that (1) she was meeting Ternes's legitimate expectations, (2) she was similarly situated to a more favorably treated employee, or (3) Ternes's reason for firing her was pretextual. As for her FMLA claim, the court concluded that she could not establish a *prima facie* case of retaliation because she did not present evidence that would allow a finder of fact to conclude that she was meeting Ternes's legitimate

expectations at the time she was fired, nor did she identify a similarly situated employee who did not request FMLA leave.

Six months after the district court entered its judgment, we issued our opinion in *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), explaining that in employment discrimination cases, district courts must "stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards." We clarified that the ultimate question in an employment discrimination case is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id*. at 765; see also *Williams v. Office of the Chief Judge of Cook Cnty. Ill.*, 839 F.3d 617, 626 (7th Cir. 2016); *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 899–900 (7th Cir. 2016), *cert. denied,* 137 S. Ct. 1614 (2017). Our decision in *Ortiz* did not disturb the burden-shifting framework, however, see 834 F.3d at 766, and so to the extent Mourning wants to take advantage of it, she retains the initial burden of establishing a *prima facie* case of discrimination, see *McDonnell Douglas Corp.*, 411 U.S. at 802–03.

Mourning has not carried that burden for her Title VII claim, as she has not presented evidence that would permit a reasonable factfinder to conclude that she was fired because of her sex. We note that although Mourning's appellate brief tracks the *McDonnell-Douglas* framework, it does not focus on trying to show that Dergis and Brown acted against her because she is a woman. She appears to rest her sex discrimination claim on a comparison to Walter Fish, the former materials manager at Ternes. Fish, she argues, worked in a similar managerial position, acted more egregiously than she did, yet

was given additional chances to improve his performance, and later was allowed to resign instead of being fired. For Fish to be an adequate comparator, however, Mourning would need to show that he was treated more favorably than she was by the same decisionmaker, *i.e.*, Howard Ternes. See *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014). But Mourning does not mention whether the complaints raised by subordinates against Fish were ever brought to the attention of Howard Ternes, and the current materials manager testified that she did not think so.

Mourning's inability to establish a *prima facie* case of sex discrimination dooms her claim, but we add that her arguments about pretext are also unconvincing. Mourning contends that the reason for her discharge must have been pretextual because the accusations in her subordinates' internal complaint and the assessment of her work provided by Allison Transmission were, in her view, false. But Mourning's focus on the veracity of the complaints by her subordinates and Allison Transmission is misplaced. To show pretext, Mourning must establish both that a phony reason (not just an unfounded one) was given for her discharge, *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013); *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005), and that the phony reason was given by an actual decisionmaker, see *Hnin v. TOA (USA), LLC*, 751 F.3d 499, 506 (7th Cir. 2014); *Hill*, 724 F.3d at 968—here, Howard Ternes as represented by Dergis and Brown. (This raises another problem with her case: she may not have sued the proper defendant. The only defendant she named was Ternes but it was Howard Ternes, the parent corporation, that fired her. Given our other conclusions, we need not pursue this wrinkle further.) Mourning does not contend that Dergis and Brown knew that the allegations against her were false,

nor does she point to evidence from which it can be inferred that they fired her because she is a woman.

Regarding Mourning's FMLA claim, we ask, following *Ortiz*, whether the record contains sufficient evidence to permit a reasonable factfinder to conclude that Howard Ternes fired her in retaliation for taking FMLA leave. See *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (clarifying the standard for a retaliation claim under Title VII, post-*Ortiz*), *cert. denied*, 137 S. Ct. 1115 (2017); *Ortiz*, 834 F.3d at 765. She has not directed us to any evidence in the record that would permit a factfinder to decide in her favor. Mourning could not identify anyone in the office who she believed had an issue with her taking leave or with her medical condition, and she offers no evidence that Howard Ternes retaliated against her based on her medical leave.

AFFIRMED.