**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 24, 2020[*]
Decided February 26, 2020

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 19-2722

| | |
|---|---|
| SONYA NEWSON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District |
| | of Wisconsin. |
| | |
| *v.* | No. 17-CV-883 |
| | |
| AURORA HEALTH CARE, INC., | David E. Jones, |
| *Defendant-Appellee.* | *Magistrate Judge.* |

## O R D E R

Aurora Health Care fired Sonya Newson after she disclosed patients' Protected Health Information in connection with a discrimination complaint she filed against Aurora with a state agency. She then sued Aurora in federal court, asserting that her termination was retaliatory and discriminatory and that she faced other discriminatory treatment—including a failure to promote her and a hostile work environment—while

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

employed by Aurora. The district court entered summary judgment for Aurora, and because Newson lacks evidence that undermines the neutral reason for her termination or otherwise supports her claims, we affirm that decision.

## Background

Newson, an African-American woman, worked at Aurora Health Care, Inc., a non-profit healthcare network, for 18 years until she was fired in January 2016. Since 2008, she worked as a loss prevention officer. Newson was responsible for ensuring the security of Aurora's property, employees, patients, and visitors. She investigated incidents that occurred on hospital property and prepared reports about them.

In addition to regular job training, Newson also received annual training on the Health Insurance Portability and Accountability Act of 1996 (HIPAA) as well as Aurora's policies on the protection and disclosure of patient information. The law requires Aurora, as a healthcare organization, to protect patients' personal information and safeguard Protected Health Information (PHI); Newson's HIPAA trainings outlined her obligations regarding PHI.

Robert Solie managed the loss prevention department from July 2013 through Newson's termination and was her direct supervisor. Solie told Newson that her job required her to take a certification exam. Newson experienced scheduling issues, computer glitches, and external distractions (such as a noisy test-taking environment), but she passed the exam on her third try.

Newson twice sought promotion to security sergeant unsuccessfully. When she first applied, Newson was not eligible because she had received a corrective action for attendance issues within the previous six months. When Newson reapplied, she was interviewed but received the lowest score of the applicants and was not selected.

Newson complained to Iris Lowery in the human resources department about her alleged unfair treatment by Solie. She cited not being selected to the security sergeant position and having to take the certification exam multiple times under unfavorable conditions. She also took issue with receiving emails from Solie that requested incident reports about events she was unaware of. Lowery shared those concerns with Solie and then scheduled a meeting with Newson to discuss Solie's responses. But Newson missed the meeting (because she was carjacked) and did not reschedule it.

Believing that she was not being taken seriously, Newson then filed her first complaint with the State of Wisconsin's Department of Workforce Development Equal Rights Division (ERD). That complaint alleged that Solie discriminated against Newson based on her race and sex by requiring her to write incident reports, failing to meet with her when she wanted to contest a wrongful writeup, making her take the certification test in a substandard testing environment, and denying her promotion despite her long history with Aurora. Aurora sought to mediate the complaint, but when mediation was unsuccessful, it submitted its position statement.

Newson filed a rebuttal submission, which included documents she believed supported her allegations. Some of those documents contained PHI, including patients' names, dates of birth, and medical-record numbers. Aurora contacted the ERD to redact that information from Newson's submissions and then conducted an internal investigation to determine whether the disclosure violated HIPAA or Aurora's policies. After determining that it did, Aurora terminated Newson's employment.

Newson then filed a second complaint with the ERD, alleging that Aurora terminated her (1) in retaliation for filing the first complaint and (2) because of her race and sex. After the ERD determined that there was no probable cause to pursue the case, Newson came to federal court. In the operative complaint, she alleged that her termination was wrongful because she believed she had provided information that the ERD had requested, and she did not know she had to redact it. She also alleged that she was fired in retaliation for the first ERD complaint, that she had been subjected to a hostile work environment, and that Aurora had wrongfully failed to promote her. She asserted generally that white men were treated more favorably than she was.

The parties consented to proceed before a magistrate judge. After a lengthy discovery period, Aurora moved for summary judgment. Newson opposed the motion but failed to comply with local rules requiring her to explain and provide evidence supporting any factual disputes. The magistrate judge stated that her noncompliance was reason enough to enter summary judgment for Aurora but nonetheless decided the motion on the merits, concluding that no reasonable jury could find that Aurora was liable for discrimination, hostile work environment, or retaliation. Newson appeals.

**Analysis**

Newson's brief is not easy to follow, but we understand her to primarily challenge the conclusion that she was fired for disclosing sensitive information in violation of HIPAA and Aurora's policies, rather than because of her race, sex, and protected activity. In reviewing Newson's discrimination and retaliation claims, we look at the evidence holistically and ask whether a reasonable jury could conclude that her race or sex, or her administrative complaint of discrimination, caused her to be fired. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). With respect to the discrimination claim, she had to produce evidence that her race or sex was a "motivating factor," *see Smith v. Wilson*, 705 F.3d 674, 679 (7th Cir. 2013), and with respect to retaliation, she needed evidence that her administrative charge was the "but-for" cause, *see Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017). She fell short.

Aurora provided evidence that it fired Newson for a nondiscriminatory, nonretaliatory reason—her disclosure of PHI—and Newson did not raise a factual dispute about whether an unlawful consideration was the real cause. Her protestations that she received insufficient training on HIPAA, that she did not disclose PHI knowingly, and that her disclosure should not have outweighed her 18 years of service are irrelevant. We do not evaluate the merits of the employer's decision to terminate someone, only whether the explanation was "honestly believed." *Lord*, 839 F.3d at 564; *Barnes v. Bd. of Trs. of Univ. of Illinois*, 946 F.3d 384, 389-90 (7th Cir. 2020). But Newson questions only the merits of the reason, not its veracity. Beyond that, she has only her own speculation that she was fired for an impermissible reason, which is insufficient to raise a genuine issue of material fact. *See Haynes v. Indiana Univ.*, 902 F.3d 724, 734 (7th Cir. 2018).

Newson also appears to question the magistrate judge's decision on her hostile-work-environment claim; she asserts that she established a pattern of disrespectful treatment by Solie. To survive summary judgment, Newson needed evidence that (1) the work environment was subjectively and objectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014). In looking at whether conduct is severe or pervasive enough to constitute a hostile work environment, we ask "whether it unreasonably interferes with an employee's work performance." *Id.* at 601.

Newson suggests that the magistrate judge "overlooked" or failed to consider her evidence on this claim, but we cannot discern evidence of conditions that rise to the level of an objectively hostile work environment. Her summary judgment brief argued that Solie scrutinized her work too closely, questioned her work ethic, and improperly requested incident reports. But the emails that Newson cites show Solie asking appropriate work-related questions in his capacity as a supervisor. He asked for more information about hospital security incidents, including one in which a patient had a gun and the panic alarm did not sound properly and another in which a patient's money went missing. The emails further showed her being held accountable for her lateness and for a uniform violation. Newson also submitted an affidavit from a coworker and one from her sister, but each generally corroborated Newson's concerns without offering personal observations about her work environment or Solie's conduct. None of this is sufficient evidence from which a jury could determine that Solie subjected Newson to an objectively offensive work environment. *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (determining that a work environment was not hostile where it "was not physically threatening, nor was it openly racist, nor did it unreasonably interfere with plaintiffs' performance").

Finally, Newson reasserts on appeal that, in not promoting her to security sergeant, Solie discriminated against her. An applicant can establish a discriminatory failure to promote with evidence that she was qualified for the position and someone outside the protected class who was "not better qualified" was hired instead. *Barnes*, 946 F.3d at 389. But Newson did not submit evidence on either of these points. Instead, the evidence shows that she was ineligible for a promotion when she first applied because of attendance issues and was the lowest-scoring interviewee when she applied next. To the extent Newson argues that the magistrate judge entirely overlooked the failure-to-promote claim, we cannot find grounds for reversal given the absence of any evidence to support it.

AFFIRMED