In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3282

ANTHONY SMITH, *et al.*,

*Plaintiffs-Appellants,*

*v.*

CITY OF JANESVILLE, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 18-cv-00523 — **William M. Conley**, *Judge.*

ARGUED FEBRUARY 23, 2022 — DECIDED JULY 22, 2022

Before SYKES, *Chief Judge,* and FLAUM and KANNE,* *Circuit Judges.*

FLAUM, *Circuit Judge.* The Janesville Police Department of Janesville, Wisconsin, decided to create its own "no-preference tow list" to simplify its response to traffic accidents in

---

* Circuit Judge Kanne died on June 16, 2022, and did not participate in the decision of this case, which is being resolved under 28 U.S.C. § 46(d) by a quorum of the panel.

which a vehicle owner expressed no preference as to which tow company towed their car. Appellant Anthony Smith is Black and owns Flying A.J.'s Towing Company, LLC, which operates in Janesville and the surrounding area. Upon receiving Flying A.J.'s application to be added to the list, the Janesville Police Department originally stated that the application would be placed on file, but shortly thereafter approved Flying A.J.'s and included it on the tow list. Less than two months later, however, the Janesville Police Department removed the company from its tow list, citing the company's unresponsiveness and complaints related to one particular tow job. Smith and Flying A.J.'s claim that their removal was, instead, due to Smith's race and certain complaints of racial discrimination he had made against the police department. The district court dismissed these claims, brought under 42 U.S.C. §§ 1983 and 1981, finding that Smith had failed to put forth sufficient evidence to allow a jury to determine that Smith's race or former complaints caused the department's decision to remove Flying A.J.'s from the tow list. For the following reasons, we affirm.

## I.    Background

### A. The City of Janesville's Creation of Its No Preference Tow List

Smith and his wife, both Black, own and operate Flying A.J.'s in Rock County, Wisconsin. Janesville is a city within Rock County.

A "no preference tow list" is a list of towing companies that a police department may call when it needs to tow a vehicle and the vehicle's owner states that they have no preference as to which company performs the job. Before June 2016,

the Janesville Police Department (the "Department") simply used the tow list maintained by Rock County. Around that time, however, Deputy Chief Jimmy Holford, Jr., recommended to Chief David Moore that the Department implement its own tow list in response to a number of complaints they had received regarding companies on the Rock County list. Chief Moore agreed, and in early June 2016, Holford sent out an application form to all companies on the old Rock County list, notifying them that Janesville was creating its own tow list and that they would need to apply in order to be included. The application listed a number of requirements for companies wishing to be added to the list, including that they maintain a business address in Janesville and that they allow the Department to perform a facility inspection. The application requested that the form be completed and returned by June 23, 2016.

By June 15, 2016, four companies had submitted applications, and Holford had determined that all four met the requirements set out in the application. Chief Moore approved the list of those four companies, so Holford published the list that day. The announcement stated, in relevant part: "The following companies met the required standards and will comprise the Janesville Police Department 'No Preference Tow List.'" In an email a few days later, Holford referred to this as the "final list." None of the owners of the four companies on the list were Black.

Six days later, but still two days before the June 23 deadline, Smith submitted his application for Flying A.J.'s to Holford via email. The next day, Holford responded: "Thank you for your returned application, it has been placed on file in the event [the Department] needs to replace or add to its current

list." In response, Smith filed a complaint with the Janesville City Manager's Office, alleging that the Department's decision not to include Flying A.J.'s on the tow list was motivated by racial discrimination. As the district court noted, in 2010, Smith had successfully sued the town of Beloit, Wisconsin, after experiencing racial discrimination by the police department. Smith now alleges that Janesville's reticence to include his company on the tow list stemmed in part from these previous actions speaking out against discrimination.

Smith's complaint was forwarded to Chief Moore, who called Smith and assured him that the decision was not racially motivated and that if Flying A.J.'s met all of the requirements, the company would be added to the tow list.

Moore instructed Holford to determine whether Flying A.J.'s met the relevant requirements, so Holford set up a time to meet with Smith at Flying A.J.'s Janesville office. Holford met with Smith on July 12, 2016, and Smith has now testified that, during the meeting, Holford stated that if Smith mentioned race discrimination, "the interview would be terminated and Flying A.J.'s application for the tow list would not be considered." Holford completed the inspection, however, and issued a new tow list later that day that added Flying A.J.'s and one other towing company, KB Towing.

### B. The July 25, 2016 Incident

About two weeks later, on July 25, 2016, at around 4:15 PM, Sgt. Jimmy G. Holford III ("Sgt. Holford III")[1] and Officer Joel Melton responded to a car crash, and the owner of one of the

---

[1] Sergeant Jimmy G. Holford III is a separate individual from Jimmy G. Holford, Jr. We refer to Holford III as Sgt. Holford III to avoid confusion.

vehicles, Susan Paul, requested a tow. Flying A.J.'s was the next company on the tow list rotation, so when Paul expressed no preference as to which tow company responded, Flying A.J.'s was contacted.

The parties dispute many of the details of what happened next, but the following core elements are undisputed. Flying A.J.'s driver Calvin Richardson arrived at the scene. Richardson spoke to neither the officers at the scene nor the owner of the vehicle, Paul. Richardson spoke to the Flying A.J.'s dispatcher, who told him that the customer wanted her car delivered to Rock County Honda. Instead, Richardson took the car to the Flying A.J.'s lot in Janesville with the intent to deliver the car to the Honda dealership the following day. Smith later explained that Richardson made this decision because the Honda dealership would have been closed at that time of day.

On the day of the crash, Melton submitted a memorandum to Holford detailing the events at the scene and explaining his disappointment with the tow service provided by Flying A.J.'s. In particular, he opined that the tow driver displayed a "lack of professionalism or courtesy" when he left without offering the customer a ride home. Holford forwarded Melton's complaint to Smith, stating, "I am interested in your response as I fully investigate the issues." A week later, when he still had not received a response from Smith, Holford sent the following message:

> Mr. Smith,
>
> I have not received a response from you reference this complaint [*sic*]. Please respond by Thursday, August 11th. You may also report to

my office if that is preferable, call first to insure
my availability.

This email did prompt a response from Smith. Later that same day, he sent a rambling message to Holford, in which he claimed that there were no officers or vehicle owners at the scene. This is contradicted by later sworn statements made by the driver, who clarified that he interacted (but did not speak) with both police officers and fire department personnel at the scene. Smith's message then addressed the complaint's assertion that the driver displayed a lack of professionalism by stating:

> This is very disturbing to me and very danger-
> ous for an African American owned company to
> be operating in the City of Janesville, viewing
> videos of officers gunning down African Amer-
> icans for un-threatening actions and killing
> them along with false allegations…. [The com-
> plaint's] allegations [against Flying A.J.'s] are
> false and unbelievable. The officer should be
> fired and anyone else who helped write up
> these trumped up charges on this minority
> owned company. I can be killed in the streets
> and the allegations could be that I picked up a
> chain and lunged at the officer or another per-
> son with a "J" hook. Some of these officers just
> look for a reason to shoot and kill an African
> American.

Perhaps having difficulty following the thread of Smith's response, Holford replied the next morning and suggested that "it would be most productive" if Smith came to his office

to discuss the complaint in person that Thursday, two days later. He noted that he had stopped by Flying A.J.'s Janesville location twice the day before but found it unattended. When Holford had not received a response by that Thursday, he emailed Smith again and requested that they set up a meeting to discuss the issue the following Tuesday, August 16, "any time after 9 a.m." Holford noted that he would be "forced to suspend" Flying A.J.'s from the tow list if Smith did not respond. Smith did not respond, and no follow-up meeting ever occurred.

Sometime after Melton submitted his memorandum about the traffic incident but before August 15, Melton followed up with Paul, the owner of the vehicle towed by Flying A.J.'s. Paul relayed that she was "unhappy with the tow service she[] received," and stated that her GPS device was missing from her vehicle after the tow. She also told Melton that Smith had called her directly and that she felt threatened by the call. Smith had told her that he wanted to record the conversation, and she was sufficiently frightened after the call that she notified the Janesville Police Department. In particular, she was afraid of falling victim to retaliation given that Flying A.J.'s might have been in possession of her GPS device, which contained her home and work addresses, as well as her common travel routes. Melton relayed this information to Holford in a memorandum.

Holford then summarized all of these events—the tow truck driver's response and conduct at the July 25 crash, Holford's attempts to get a response from Smith, and Smith's call to Paul—in a memorandum to Chief Moore dated August 15, 2016. On August 29, 2016, Moore issued a letter informing

Smith that Flying A.J.'s would be removed from the tow list for one year.

Smith then brought this suit against the City of Janesville, Chief Moore, Deputy Chief Holford, Sgt. Holford III, and Officer Melton. His complaint alleged three causes of action: (1) that the defendants violated his Equal Protection rights by delaying adding Flying A.J.'s to the tow list and removing Flying A.J.'s from the tow list because of Smith's race; (2) that the delay and removal based on Smith's race also violated his right to make and enforce contracts, guaranteed by 42 U.S.C. § 1981; and (3) that the delay and removal were retaliation against Smith for complaining about the defendants' violation of his § 1981 rights.

The district court entered summary judgment in favor of the defendants on all of Smith's claims, holding that Smith had failed to produce evidence sufficient to allow a reasonable jury to find that racial discrimination or retaliation were the causes of the Department's delay in adding his company to the list or its later removal of his company from the tow list. Smith now appeals.

## II.    Discussion

We review summary judgment rulings de novo. *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005). "Summary judgment is warranted when the evidence, when viewed in a light most favorable to the non-moving party, presents 'no genuine issue as to any material fact'" such that "'the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted).

The key issue in this case, as in many discrimination cases, is causation. In particular, we must determine whether Smith's race or his complaints of racial discrimination caused the Department to remove his company from its tow list. *See, e.g.*, *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (holding that the question in discrimination cases "is simply whether the evidence would permit a reasonable fact-finder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action"); *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) ("A retaliation claim requires proof of causation…."); *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010) ("The same requirements for proving discrimination apply to claims under Title VII, § 1981, and § 1983."). Because this is true for all of his claims, we examine the Department's conduct toward Flying A.J.'s, asking whether a reasonable jury could conclude that either the delay in adding or removal of the tow company was caused by Smith's race or prior complaints.

### A. Delay in Being Added to the Tow List

Smith's first claim is that the Department delayed in adding him to the tow list. Smith submitted Flying A.J.'s' application on June 21, and the Department added the company to the tow list on July 12. As we understand it, Smith's claim is that his company should have been added more quickly, though he has not suggested an amount of time that would have been acceptable.

In support of his claim that this delay was caused by racial discrimination and was an act of retaliation for his previous complaints, Smith offers two pieces of evidence. First, he points to the fact that the Department published its "final list" before the application period expired and before Flying A.J.'s had submitted its application. When Smith then submitted Flying A.J.'s application (still within the original application window), Holford told him the application would be "placed on file in the event [the Department] needs to replace or add to its current list." In Smith's view, the Department intentionally stopped reviewing applications before Flying A.J.'s had submitted its paperwork—even though the application window was still open—because it did not want to work with Smith due to his race. But there is simply no evidence that the decision to publish the final tow list early was motivated by racial animus. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to enable a plaintiff to survive summary judgment, and here, Smith has failed to marshal even a scintilla of evidence to support his allegation. *See Liberty Lobby, Inc.*, 477 U.S. at 252. It is worth noting that the Department also reviewed an application from and added to the tow list a white-owned company after originally publishing the "final list."

Moreover, Smith is far from the only tow company owner that was upset by Holford's decision to publish the tow list early. On July 7, a number of tow companies—whose owners do not appear to all be of any one race—planned a protest outside of the Janesville police station, stating that their "right to earn a living in the City of Janesville was taken away from [them] unjustly" when only four companies were added to the tow list on June 15. Given that so many companies were negatively affected by Holford's decision, we cannot agree

with Smith that the decision was aimed at him in particular or was motivated by racial animus.

Second, Smith points to Holford's alleged comments to him during the on-site inspection (Smith claims that Holford told him not to mention race discrimination or the interview would be terminated) as evidence that Holford delayed adding Flying A.J.'s to the list due to Smith's race and previous complaints of discrimination. But since Holford added Flying A.J.'s to the tow list the very same day Smith alleges Holford made this comment, no juror could reasonably interpret the comment as evidence that any alleged delay was the result of racial discrimination.

In short, we agree with the district court that no reasonable jury could conclude that the Department delayed in adding Flying A.J.'s to the tow list because of Smith's race or previous complaints.

### B. Removal from the Tow List

Smith's next claim is that the Department removed Flying A.J.'s from the tow list on the basis of his race and in retaliation for his complaints of racial discrimination. Smith attempts to support this claim with the same evidence discussed above—the early publication of the "final list" and Holford's comment at the site inspection—and also points to one additional piece of evidence: a comparator tow company. As discussed above, the early publication of the tow list and Holford's site inspection comment are insufficient, standing alone, to permit a jury to infer racial discrimination, so we turn now to the proffered comparator, a white-owned tow company, Don's Towing. Smith claims that Don's Towing received a complaint similar to the complaint levied against

Flying A.J.'s related to the July 25 accident but that Don's Towing received a lesser punishment because the owner was white. However, the situations leading to the two complaints are too dissimilar for any reasonable jury to conclude that the factor leading to any perceived disparate treatment was the race of the companies' owners. We therefore affirm the district court's entry of summary judgment on the removal claims as well.

Whether another entity is an adequate comparator depends on whether it is similarly situated to the plaintiff. *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 369 (7th Cir. 2019). "[T]he similarly-situated inquiry is flexible, common-sense, and factual. It asks 'essentially, are there enough common features between the individuals to allow a meaningful comparison?'" *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012) (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir.2007), *aff'd*, 553 U.S. 442 (2008)). At base, the purpose of the "similarly situated" inquiry is "to eliminate other possible explanatory variables, … [to] isolate the critical independent variable—discriminatory animus." *Id.* at 846 (citation and internal quotation marks omitted).

In this case, the complaint against Don's Towing related to one excessive charge for a tow job and an unstaffed Janesville address. Though the Department did not suspend Don's Towing from the tow list in response to these occurrences, Holford sent an arguably harsher email to Don's Towing than he did to Flying A.J.'s. In it, he specifically warned that any future complaints against Don's Towing would result in its suspension from the list. Additionally, the owner of Don's Towing responded to the email within two hours to address

Holford's concerns—a far cry from the response time from Flying A.J.'s, as discussed below.

The complaints about Flying A.J.'s' conduct in relation to the July 25 accident were arguably more concerning, and Smith's response to those complaints was far less prompt and professional. First, the Flying A.J.'s driver who responded to the accident spoke to no one at the scene, towed away the customer's vehicle without letting her know where he was taking it, and left her without a ride. The record establishes not only these facts but also that Deputy Chief Holford, the person responsible for creating and maintaining the tow list, was frustrated with how the company handled the accident at the time he learned of it, which undermines any argument that he cooked up his dismay with the company's conduct after the fact as pretext for removing them on the basis of race.

Second, when Holford reached out to Smith to get his comments on the July 25, 2016 accident, Smith first ignored his email and then, after Holford followed up, Smith's reply was rambling and largely unresponsive to Holford's concerns. Moreover, Smith's response relaying that the Flying A.J.'s driver did not see any police or fire department personnel at the scene of the accident was contradicted by Officer Melton's body camera footage that Holford reviewed as part of his investigation into the incident.

Third, Paul, the owner of the vehicle involved in the July 25 accident, alleged serious misconduct on the part of Flying A.J.'s. First, she claimed that her GPS device was missing after she got her car back from the mechanic shop. Though there is no direct proof that anyone at Flying A.J.'s was responsible, theft of property was a serious concern for the Department— the June 2016 letter inviting applications for the new tow list

explicitly listed "[v]ehicle owner complaints" and "theft or loss of personal property" as "examples" of conduct that would "be cause for removal from the no-preference tow list." Second, Paul told Melton that Smith called her after learning what she had told the police. Smith had apparently wanted to record the conversation, which left Paul frightened and threatened—so much so that she decided to notify the police department. It was plainly reasonable for Holford to take these complaints from Paul seriously, and they too, provide legitimate, nondiscriminatory, and nonretaliatory reasons to remove Flying A.J.'s from the tow list.

Finally, Smith neglected to meet with Holford to discuss the complaint and declined to even respond to any of Holford's emails requesting such a meeting. This lack of communication stands in contrast to that of Don's Towing, which responded to Holford promptly when confronted with the complaint against it. Thus, the comparison Smith attempts to draw between Don's Towing and Flying A.J.'s does not support an inference of discrimination or retaliation.

In sum, the evidence Smith offers is insufficient, even when considered together, to allow a reasonable jury to conclude that racial discrimination motivated the Department's decision to remove Flying A.J.'s from the tow list. Summary judgment was therefore appropriate.

## III.   Conclusion

The district court's entry of summary judgment is AFFIRMED.